# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00784-CV

**Melissa Gates, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-01-002857, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## O P I N I O N

Melissa Gates appeals from a judgment granting the Texas Department of Family and Protective Services's plea to the jurisdiction and dismissing her lawsuit against it. As its sole ground for dismissal, the Department had urged that Gates had failed to exhaust her administrative remedies. Concluding that Gates was not required to exhaust any administrative remedies before prosecuting her suit, we reverse the judgment of dismissal and remand to the district court for further proceedings.

## BACKGROUND

At relevant times, Ms. Gates and her husband have been the parents of thirteen children, eleven of whom were adopted and some of whom have special needs. On Friday, February 11, 2000, personnel of the school district where some of the Gateses' children were enrolled telephoned the Department and reported that the Gateses had allegedly abused one of the children

emotionally. That evening, the Department took emergency custody of all thirteen children without court order or consent. *See* Tex. Fam. Code Ann. § 262.104 (West Supp. 2007).**¹** The following Monday, the Department filed, in a Fort Bend County district court, a petition to terminate the Gateses' parental rights and appoint the Department managing conservator. *Id.* § 262.105 (West 2002). A hearing was held on the same day. *Id.* § 262.106 (West 2002). At the conclusion of the hearing, the trial court ordered all thirteen children immediately returned to the Gateses. *See id.* § 262.107 (West 2002). Subsequently, in September 2000, the Department non-suited its parental-termination action.

In the meantime, Department staff had continued to investigate the report of emotional abuse. *See id*. § 261.301(a) (West Supp. 2007) (with assistance from appropriate law enforcement agencies, Department "shall make a prompt and thorough investigation of a report of child abuse or neglect allegedly committed by a person responsible for a child's care, custody, or welfare. The investigation shall be conducted without regard to any pending suit affecting the parent-child relationship.").**²** In April 2000, Department staff made administrative "summary findings" of "reason-to-believe" that Melissa Gates is a "designated perpetrator" of "child abuse." *See* 40 Tex. Admin. Code §§ 700.511(b)(1), .512(b)(2) (2007); *see also Texas Dep't of Family & Protective Servs. v. Barlow*, No. 03-05-00469-CV, 2007 Tex. App. LEXIS 5087, at *2 & n.4 (Tex. App.—Austin June 28, 2007, pet. denied) (mem. op.) (explaining that if the Department's staff

---

**¹** Because there have been no amendments to the governing statutes during the relevant time period that are material to this proceeding, we cite the statutes' current versions for convenience.

**²** *See also* Tex. Fam. Code Ann. § 261.001(5) (West Supp. 2007) ("person[s] responsible for a child's care, custody or welfare" includes a child's parents, guardians, managing or possessory conservators, and foster parents).

finds, by a preponderance of the evidence, that the reported abuse or neglect occurred and that "an individual 'is responsible for [the] abuse or neglect of a child for whom that person has responsibility for care, custody or welfare as defined by [family code] § 261.001(5),' it makes a 'summary finding' that the individual is a 'designated perpetrator' of the abuse or neglect"). One consequence of such a finding is that the "designated perpetrator's" name is placed in the Department's central registry of reported child abuse and neglect cases. *See* Tex. Fam. Code Ann. § 261.002 (West Supp. 2007); 40 Tex. Admin. Code § 700.104 (2007). The parties do not dispute that Gates's name was entered into the central registry and remains there.[3]

A designated perpetrator is entitled to request removal of his or her name from the central registry based on a favorable conclusion of the Department's administrative appeal process or "any other final ruling which has the legal effect of ruling out all allegations against that individual stemming from the investigation." 40 Tex. Admin. Code § 700.523 (2007). The legislature has mandated that "[t]he department shall by rule establish policies and procedures to resolve complaints relating to and conduct reviews of child abuse or neglect investigations conducted by the department." Tex. Fam. Code Ann. § 261.309(a) (West 2002). It has specified that the Department must provide the following administrative remedy:

> (c) If, after the department's investigation, the person who is alleged to have abused or neglected a child disputes the department's determination of whether child

---

[3] Although information maintained on the central registry is generally made confidential, during this litigation Gates has continually disclosed her placement on the registry. *Cf.* Brief of Appellant, *L.C. v. Texas Dep't of Family & Protective Servs.*, No. 03-07-00055-CV (Tex. App.—Austin notice of appeal filed Jan. 29, 2007) (party identified by pseudonym challenging placement on central registry).

3

abuse or neglect occurred, the person may request an administrative review of the findings. A department employee in administration who was not involved in or did not directly supervise the investigation shall conduct the review. The review must sustain, alter, or reverse the department's original findings in the investigation.

(d) Unless a civil or criminal court proceeding or an ongoing criminal investigation relating to the alleged abuse or neglect investigated by the department is pending, the department employee shall conduct the review prescribed by Subsection (c) as soon as possible but not later than the 45th day after the date the department receives the request. If a civil or criminal court proceeding or an ongoing criminal investigation is pending, the department may postpone the review until the court proceeding is completed.

(e) A person is not required to exhaust the remedies provided by this section before pursuing a judicial remedy provided by law.

(f) This section does not provide for a review of an order rendered by a court.

*Id*. § 261.309. The Department's rules further elaborate that this administrative remedy, which it terms an "Administrative Review of Investigative Findings" (ARIF), "is an informal review in which the requestor, investigation worker, and investigation supervisor may appear, make statements, provide relevant written materials, and ask questions," although "[o]ther interested individuals may participate or provide information at the sole discretion of the reviewer." 40 Tex. Admin. Code § 700.516(f) (2007). "The reviewer may review the investigation case record, ask questions, and gather other relevant information," and "[t]he formal rules of evidence do not apply." *Id.* § 700.516(g).

The Department by rule has created additional procedural stages in its administrative review process. Simply described, the Department's rules provide two "tracks" for appeals of its administrative findings of child abuse or neglect. Under one track, a person dissatisfied with the outcome of an ARIF may appeal to the Department's Office of Consumer Affairs. *Id*. §§ 702.801-

.849 (2007). The Department apparently maintains that no further administrative appeal lies from that determination and that the proceeding is not a "contested case" under the APA that would entitle the complaining party to judicial review under the APA.[4] Under the other track, the complaining party is afforded the right to a contested-case hearing before the State Office of Administrative Hearings, followed by a right to judicial review. *Id.* §§ 730.1701-.1702 (2007); *see Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 199 (Tex. 2004). The Department's rules make the SOAH track available only to "any alleged perpetrator about whom a finding of child abuse or neglect or adult abuse, neglect, or exploitation is to be released without that individual's consent" or "against whom an adverse action"—as defined elsewhere in the rules—"is to be taken by the department." *Id.* § 730.1702(a), (b). When an administrative appeal is on this track, the Department has purported to confer discretion on itself to grant or "waive" an ARIF and proceed directly to SOAH. *Id.* § 700.516(j) ("Notwithstanding anything in this section, if an individual is entitled to an administrative hearing before the State Office of Administrative Hearings (SOAH), [the Department] may, in its sole discretion, waive the conduct of an ARIF and proceed directly to the SOAH hearing"); *see also id.* § 700.605 (2007) (where "release hearing" is required, if "the person filing the appeal has not already been given an [ARIF] relating to those same findings . . . [the Department] may, at its own discretion, offer an ARIF prior to scheduling a release hearing.").

---

[4] Brief of Appellee at 5, *L.C. v. Texas Dep't of Family & Protective Servs.*, No. 03-07-00055-CV (Tex. App.—Austin notice of appeal filed Jan. 29, 2007).

In April 2000, Gates timely requested an ARIF, a step that ordinarily would have triggered the 45-day deadline for the Department to conduct the review. *See* Tex. Fam. Code Ann. § 261.309(d); 40 Tex. Admin. Code § 700.516(d). However, the Department, purporting to rely on the "pending litigation" exception to the 45-day deadline, declined to schedule the ARIF until mid-2006. *See* Tex. Fam. Code Ann. § 261.309(d); 40 Tex. Admin. Code § 700.516(e).[5]

Meanwhile, on August 30, 2001, Gates filed the lawsuit that gives rise to this appeal. Among other theories, Gates alleges that the Department's findings and ongoing maintenance of her name in its central registry deprive her of her fundamental right and liberty interest in familial integrity without due process of law. Gates seeks declarations that her designation and continued placement in the registry violates her due process rights,[6] as well as a mandatory injunction and mandamus compelling the Department to purge its registry of all information relating to her.

Gates's suit was initially set for trial on April 24, 2006, but was later reset for October 2, 2006. During the interim, on June 13, 2006, the Department's "Deputy Regional Director, Region 3, Child Protective Services" wrote the Gateses, giving notice that the ARIF they had requested six years earlier "will now be held," advising that "I have set aside time to meet with you on July 13, 2006, from 12:30 p.m. to 2:00 p.m.," and requesting the Gateses to confirm their availability. Emphasizing "our fervent desire to have our names cleared in every regard" and

---

[5] The Department apparently relied on the pendency of the parental-termination proceeding and, later, on a section 1983 action the Gateses filed in federal court against the Department on behalf of their children. The Gateses question this explanation, suggesting "gaps" and observing that the Department ultimately elected to schedule the ARIF while the federal litigation was still pending.

[6] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2007). Gates also sought attorney's fees. *Id*. § 37.009 (West 1997).

6

resulting interest in not "leav[ing] any stone unturned in preparation for the hearing," the Gateses responded on June 22 with several questions regarding the procedures "at the hearing," including whether and how their witnesses (including "numerous doctors, psychologists, and social workers" or their children) could present testimony, whether or how state workers would be compelled to attend, and whether they would need a court reporter. They expressed concern that scheduling problems with their witnesses might render the proposed date infeasible and that the allotted 90 minutes would be inadequate. The Department official responded on July 7 with a short letter summarizing the informal and limited review procedures of the ARIF and proposing dates for rescheduling the ARIF. This prompted further inquiries from the Gateses. Several more similar rounds of correspondence followed, without agreement as to a date for the ARIF.[7]

On September 25, 2006, the Department faxed to Gates a letter from its "Assistant Commissioner, Child Protective Services," chiding the Gateses for what the Department characterized as their "refusal to confirm any date that has been offered to you for an administrative review" and giving notice that the Department was unilaterally "waiving" the ARIF and relegating Gates to seeking a contested-case hearing before SOAH.[8] *See* 40 Tex. Admin. Code § 700.516(j). The letter stated that Gates had thirty days to file a written request for their "formal due process hearing" before SOAH or waive her right to contest the administrative findings. The letter closed with the following warning:

---

[7] The Department introduced this correspondence in support of its plea to the jurisdiction.

[8] In its plea to the jurisdiction, the Department acknowledges that it actually made the decision to waive the ARIF four days earlier, on September 21, 2006.

7

If you waive your right to a due process hearing or the SOAH judge upholds the abuse and/or neglect finding, [the Department] will be able to release your name and the finding to persons who monitor your access to, custody over, or control of children. This may jeopardize your ability to work or to be present in childcare related occupations, to work for certain volunteer agencies, or to be a foster or adoptive parent.

On the same day that it notified Gates that it had "waived" her ARIF and would be proceeding to SOAH, the Department filed a plea to the jurisdiction seeking to have Gates's lawsuit dismissed. The sole asserted basis for the plea was that Gates had failed to exhaust her administrative remedies—the SOAH hearing. A hearing on the plea to the jurisdiction was held three days later. At the hearing's conclusion, the district court granted the plea and dismissed Gates's lawsuit in its entirety.[9] This appeal followed.

## ANALYSIS

On appeal, Gates brings three issues, arguing principally that the district court erred in concluding that it lacked subject-matter jurisdiction and in dismissing the suit in its entirety. As subsidiary contentions, Gates urges that the Department acted in excess of its statutory authority in purporting to limit her administrative and judicial remedies and that section 700.516(j) of the administrative code did not authorize the Department to unilaterally waive her ARIF and relegate her to a SOAH hearing.

An exhaustion-of-administrative-remedies requirement is a corollary of an agency's exclusive jurisdiction to make the initial determination in a dispute. *See Texas Mut. Ins. Co. v. Texas*

---

[9] The district court also entered findings of fact and conclusions of law, but they are ultimately immaterial to the legal questions that are dispositive of this appeal.

*Dep't of Ins.*, 214 S.W.3d 613, 616 (Tex. App.—Austin 2006, no pet.) ("[W]here an agency has exclusive jurisdiction, the courts have no subject matter jurisdiction, and a party can turn to the courts only after first exhausting all administrative remedies."); *Department of Protective & Regulatory Servs. v. Schultz*, 101 S.W.3d 512, 518 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Our analytical starting point for determining whether a trial court or administrative agency has subject-matter jurisdiction over a dispute is article V, section 8 of the Texas Constitution. It provides that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. The legislature has provided by statute that district courts possess "the jurisdiction provided by Article V, Section 8, of the Texas Constitution," and "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. §§ 24.007-.008 (West 2004). Thus, "[c]ourts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002).

By contrast, "there is no presumption that administrative agencies are authorized to resolve disputes. Rather, they may exercise only those powers the law, in clear and express statutory language, confers upon them." *Id.* "Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Id.* The courts are not divested by an agency of the subject-matter jurisdiction they would otherwise possess to adjudicate a dispute unless the legislature has granted the agency exclusive jurisdiction, or the sole power to make the initial

determination in the dispute. *Id.* at 221; *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied). Whether an agency has exclusive jurisdiction is determined by construction of the relevant statutory scheme. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). The legislature's intent to grant an agency the sole authority to make the initial determination in a dispute may be reflected in either express statutory language to that effect or the overall statutory scheme. *Id.* at 340-42.

At oral argument, the Department conceded that Gates was not required to exhaust any administrative remedies before prosecuting her due-process claims challenging the Department's procedures related to its central registry and administrative child abuse or neglect determinations. *See Juliff Gardens, L.L.C. v. Texas Comm'n on Envtl. Quality*, 131 S.W.3d 271, 279 (Tex. App.—Austin 2004, no pet.). Consequently, it acknowledges that the district court erred in dismissing these claims. However, the Department urges that, to the extent Gates seeks to challenge the merits of the Department's administrative findings against her, those claims must be adjudicated in the SOAH proceeding.

We first observe that Gates's live pleadings appear to assert only the sorts of due-process challenges that the Department concedes Gates may prosecute in district court.[10] Even

_____

[10] Gates pleads only that the Department's procedures for initial risk assessment, administrative determination of abuse, maintaining of her name in the central registry, and continued "monitoring" of her family on that basis violate her fundamental right and liberty interest in familial integrity without due process of law. Specifically, Gates alleged that she was "denied a fair and impartial determination" because (1) "investigators are not trained nor, directed nor, is it their focus to gather and develop exculpatory evidence" and the Department here "ignored and disregarded exculpatory information"; (2) the Department "is charged with gathering evidence and is also charged with 'adjudicating' Plaintiff as a 'perpetrator'"; (3) the Department "immediately filed a civil suit against Plaintiff [that] creates an adversarial situation"; (4) the Department's requirement to "prove to the Court the reason for taking possession of the children" also creates an

10

assuming that Gates's pleadings could be construed to challenge the merits of the administrative findings themselves, however, we conclude that the legislature has not vested exclusive jurisdiction over such complaints in the Department.

In section 261.309 of the family code, as noted, the legislature explicitly provided that the ARIF remedy is *not* exclusive of any judicial remedies: "A person is not required to exhaust the remedies provided by this section before pursuing a judicial remedy provided by law." Tex. Fam. Code Ann. § 261.309(e). The Department does not dispute this, but instead urges that its purported "waiver" of the pending ARIF in favor of a SOAH contested-case proceeding somehow confers exclusive jurisdiction on itself, through SOAH, to adjudicate Gates's claims. We reject that premise.

Some of our sister courts have concluded that the legislature delegated exclusive jurisdiction to the Department to adjudicate, through SOAH contested-case hearings, disputes arising from its investigations of its *licensees*. *See Schultz*, 101 S.W.3d at 518-20, 21-22 (observing that the family code provisions governing investigations of "foster homes" incorporated chapter 42 of the human resources code, which contained an exhaustion-of-remedies requirement). But Gates is not a licensee of the Department, and the legislature has not required her to pursue complaints regarding Department investigations through SOAH. Instead, it has mandated that she receive the ARIF

"adversarial situation"; and (5) "the 'preponderance of the evidence' standard is whatever evidence [the Department] deems credible and a 'preponderance.'"

Gates also pled that she was denied due process by the application of a preponderance-of-the-evidence standard rather than clear-and-convincing evidence, "because of several unconstitutional policies and procedures," the Department's "total discretion" in its determination and absence of judicial oversight, and the vagueness of the Department's standards.

remedy and explicitly made it non-exclusive of any judicial remedies she may possess. Tex. Fam. Code Ann. § 261.309(e). The SOAH proceeding that the Department is attempting to force upon Gates, in short, is a creature entirely of its own making, ostensibly section 700.516(j). But exclusive jurisdiction of an agency, again, exists only when and if the *legislature* divests the judiciary of the subject-matter jurisdiction it otherwise presumptively possesses to adjudicate a dispute. *Subaru*, 84 S.W.3d at 221. We reject the notion that by promulgating or applying section 700.516(j), the Department could divest the judiciary of its subject-matter jurisdiction.

Furthermore, we agree with Gates that section 700.516(j) does not authorize the agency to unilaterally "waive" her ARIF remedy and force her into a SOAH contested-case proceeding that she does not want. "We construe administrative rules, which have the same force as statutes, in the same manner as statutes." *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). "Unless the rule is ambiguous, we follow the rule's clear language." *Id*. Although we defer to an agency's interpretation where there is vagueness, ambiguity, or room for policy determinations in the regulation, we cannot defer to an administrative interpretation that is plainly erroneous or inconsistent with the regulation or the underlying statute. *Id*. at 254-55 (quoting *Public Util. Comm'n of Tex. v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex. 1991)); *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group.*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied). Here, the Department's interpretation of section 700.516(j) is contrary to the legislature's express mandate that Gates have an ARIF if she timely requests it.

**CONCLUSION**

For these reasons, we conclude that the district court erred in holding that it lacked subject-matter jurisdiction because Gates failed to exhaust administrative remedies. We accordingly reverse the judgment of the district court dismissing Gates's suit and remand for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Remanded

Filed:   April 18, 2008