# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00427-CV

**County of Reeves, Appellant**

**v.**

**Texas Commission on Environmental Quality and Town of Pecos City, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GV-06-001883, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

## O P I N I O N

This is an administrative appeal challenging a district court judgment affirming the Texas Commission on Environmental Quality's (TCEQ's) decision to reject or dismiss, for "failure to prosecute," an appeal under section 13.043(b) of the water code seeking to challenge a rate change by a municipally-owned utility. *See* Tex. Water Code Ann. § 13.043(b)(3), (c) (West 2008). For reasons we explain below, we will reverse the district court's order and the TCEQ's decision.

## BACKGROUND

**Statutory framework**

The legislature has provided that the governing body of a municipality, unless it elects to cede such jurisdiction to the TCEQ, "has exclusive and original jurisdiction over all water and sewer utility rates, operations and services provided by a water and sewer utility within

its corporate limits" "for the purpose of regulating rates and services so that the rates may be fair, just, and reasonable and the services adequate and efficient." *Id.* § 13.042(a)-(c) (West 2008). However, the legislature has given the TCEQ "exclusive appellate jurisdiction to review" certain rate-making decisions of municipal governing bodies. *Id.* § 13.042(b). One of these legislative grants of appellate jurisdiction to the TCEQ is provided in section 13.043(b)(3) of the water code.

Section 13.043(b)(3) authorizes ratepayers of a municipally-owned utility who reside outside the municipality's corporate limits (and, therefore, would not vote in its municipal elections) ("outside ratepayers") to appeal to TCEQ "a decision of the governing body . . . affecting their water, drainage, or sewer rates." *Id.* § 13.043(b)(3). In such a proceeding, "the commission shall hear the appeal de novo and shall fix in its final order the rates the governing body should have fixed in the action from which the appeal was taken." *Id.* § 13.043(e).[1] The legislature has further charged that

---

[1] The legislature has further provided:

The commission may establish the effective date for the commission's rates at the original effective date as proposed by the service provider, may order refunds or allow a surcharge to recover lost revenues, and may allow recovery of reasonable expenses incurred by the retail public utility in the appeal proceedings. The commission may consider only the information that was available to the governing body at the time the governing body made its decision and evidence of reasonable expenses incurred by the retail public utility in the appeal proceedings. The rates established by the commission in an appeal under Subsection (b) of this section remain in effect until the first anniversary of the effective date proposed by the retail public utility for the rates being appealed or until changed by the service provider, whichever date is later, unless the commission determines that a financial hardship exists.

Tex. Water Code Ann. § 13.043(e) (West 2008). *See also id.* § 13.043(h) (authorizing TCEQ, on motion by its executive director or the appellant, to establish interim rates to be in effect until a final decision on the appeal is made).

2

"[t]he commission shall ensure that every rate made, demanded, or received by any retail public utility . . . shall be just and reasonable. Rates shall not be unreasonably preferential, prejudicial, or discriminatory but shall be sufficient, equitable, and consistent in application to each class of customers." *Id.* § 13.043(j).

The legislature has required that an appeal under section 13.043(b) "must be initiated by filing a petition for review with the commission and the entity providing service within 90 days after the effective date of the rate change." *Id.* § 13.043(c). "The petition," the legislature has further required, "must be signed by the lesser of 10,000 or 10 percent of those ratepayers whose rates have changed and who are eligible to appeal under Subsection (b)." *Id.*[2] Consequently, to appeal a decision of a municipal governing body "affecting the[] water, drainage, or sewer rates" that a municipally-owned utility can charge them, outside ratepayers must obtain petition signatures from at least ten percent of the utility's customers (10,000, if that figure is less) who both "reside outside the corporate limits of the municipality" and "whose rates have changed." *See id.* § 13.043(b)(3), (c). For a person's signature to count toward the ten-percent requirement, in other words, the person must, as TCEQ observes in its brief, "have two qualifications: they must live outside the City's limits and they must have had a change in their rates."

The legislature has also imposed a corresponding obligation on the governing bodies of municipally-owned utilities when changing the rates of outside ratepayers: "[W]ithin 30 days

---

[2] Each person receiving a separate bill is considered a ratepayer, but one person may not be considered more than one ratepayer regardless of the number of bills the person receives. *Id.* § 13.043(d). The petition for review is considered properly signed if signed by a person, or the spouse of a person, in whose name utility service is carried. *Id.*

after the date of a final decision on a rate change," the municipal governing body "shall provide individual written notice to each ratepayer eligible to appeal who resides outside the boundaries of the municipality." *Id.* § 13.043(i). "The notice must include, at a minimum, the effective date of the new rates, the new rates, and the location where additional information on rates can be obtained." *Id.* When imposing these notice requirements, the legislature necessarily contemplated that the municipality and its utility—which, after all, bills its ratepayers—would know or could ascertain which of the outside ratepayers were impacted by its rate change, what their new rates were, and the mailing addresses of those ratepayers.

**Rule 291.42**

The TCEQ has promulgated rules regarding appeals of rate actions under section 13.043(b) of the water code. *See generally* 30 Tex. Admin. Code § 291.41-.43 (2006). These include rule 291.42, which specifies various required contents of a petition seeking review of rates under section 13.043(b):

(a)    Petitions for review of rate actions filed pursuant to the Texas Water Code, § 13.043(b), shall contain the original petition for review with the required signatures. Each signature page of a petition should contain in legible form the following information for each signatory ratepayer:

(1)    a clear and concise statement that the petition is an appeal of a specific rate action of the water or sewer service supplier in question as well as a concise description and date of that rate action;

(2)    the name, telephone number, and street or rural route address (post office box numbers are not sufficient) of each signatory ratepayer. The petition shall list the address of the location where service is received if it differs from the residential address of the signatory ratepayer;

4

(3)      the effective date of the decision being appealed;

(4)      the basis of the request for review of rates; and

(5)      any other information the commission may require.

*Id.* § 291.42(a); *see also id.* § 291.42(b) ("A petition must be received from a total of 10,000 or 10% of the ratepayers whose rates have changed and who are eligible to appeal, whichever is less."), (c) (no filing fee required for "appeals or complaints filed under Texas Water Code §13.043(b).").

A central disputed issue in this proceeding, as we further discuss below, concerns the "concise description . . . of that rate action" that rule 291.42(a), subpart (1), states should be included on "[e]ach signature page of a petition . . . for each signatory ratepayer." TCEQ maintains that the "concise description . . . of that rate change" that rule 291.42 requires on each signature page of a petition must not only state that each signatory is complaining that his water or sewer rates were changed (e.g., "City A raised our water rates and we're appealing that decision"), but must specifically identify each signatory ratepayer's old rates and the new rates of which he is complaining (e.g., "our old water rates were X, City A raised them to Y, and we're appealing that decision."). TCEQ has published a two-page pamphlet titled "Appealing a Rate Change Decision Made by a Board of Directors, a City Council, or County Commissioners," which it characterizes as a "guideline" accurately reflecting this and other requirements of rule 291.42. The pamphlet includes a "sample petition":

**Sample Petition**
(The wording underlined should be revised as needed for your petition.)

**Petition to Appeal Rates Established by the <u>Board of Directors</u>**
<u>XYZ Water Supply Corporation</u>
<u>1234 Main Street</u>
<u>Anytown, Texas 99999</u>

5

The undersigned ratepayers of <u>XYZ Water Supply Corporation</u> hereby appeal the decision of <u>the board of directors of the Corporation</u> affecting the rates charged to them by <u>XYZ Water Supply Corporation</u>. The <u>rate change was effective on September 1, 2000</u>, and affected the rates charged for <u>water utility service, tap fees, late charges, and reconnect fees</u>. On September 5, 2000, the ratepayers were notified by the service provider of this rate increase. The undersigned request that the Texas Commission on Environmental Quality review the decision to determine if the rates established are just and reasonable. The old rates charged by the service provider are <u>$20.00 minimum bill plus $2.00 for each additional 1,000 gallons</u>, and the new rates are <u>$25.00 minimum bill plus $2.00 for each addition [sic] 1,000 gallons</u>. The undersigned designate the <u>XYZ Property Owners Association</u> as their representative on the matter. Correspondence to the ratepayers' representative may be directed to <u>Ms. Jane Doe, President, XYZ Property Owner Association, 1235 Main Street, Anytown, Texas 99999; 512/555-4321</u>.

The sample petition indicates that, within any space remaining on the page beneath this statement, signatories should provide their printed names and signatures, "Service Address (AND Mailing Address If Different from Service Address)," and phone numbers.

TCEQ's rules do not specify any particular consequence of failing to comply with rule 291.42. The agency has explained that its requirement that each signature page recite the signatories' old and new rates enables it to administer the two statutory "qualifications" for signing a petition to appeal a municipal rate-making decision under section 13.043(b)(3). Specifically, TCEQ has insisted that it must "strictly enforce" its requirement that each signature page recite the signatories' old and new rates because if "the new and old rates were not clearly described" in this manner, "TCEQ could not ascertain that the people signing the petition were indeed those whose rates had changed." As for whether the signatories' statutory qualifications might be easily verified from other information they have provided in their petition, the agency dismisses this notion as "unreasonable" or "impossible" because "some petitions can contain hundreds if not thousands of

6

signatures." TCEQ similarly urges that each signature must appear on the same page as the recitation of the signatories' old and new rates because otherwise the agency lacks assurance that the signatories are "knowingly and intentionally" appealing their rate change or "knew what they were signing."

**The Ratepayers' efforts to appeal**

This proceeding arises from the efforts of a group of outside ratepayers (the "Ratepayers") to appeal, under section 13.043(b)(3) of the water code, an ordinance of the Town of Pecos City that adopted new water and wastewater rates for the City's municipal utilities effective December 8, 2005. On the ninetieth day after the ordinance's effective date, March 8, 2006, a "Petition of County of Reeves and Other Outside City Ratepayers Pursuant to Section 13.041(b) and (c), Texas Water Code, to Appeal Water and Wastewater Rates Adopted By the Town of Pecos City Effective December 8, 2005" was filed with TCEQ. The petition consisted of a front page, two pages containing signatures, and three pages of attachments. The front page stated the intent of the County of Reeves (where the Town of Pecos City is located) and "the outside ratepayers whose signatures are on this petition [to] . . . appeal the decision of the Town of Pecos City ("City") effective December 8, 2005 to adopt new water and wastewater rates." The petition attached and incorporated by reference "[a] true and correct copy of the Town of Pecos City New Water and Wastewater Rates, being ordinance No. :05-1-01, effective December 8, 2005." Attached to the petition were two sets of charts or lists that, as TCEQ's counsel acknowledged during oral argument, reflected the new water and wastewater rates that the City had adopted in the ordinance, as well as the City's prior water and wastewater rates.

Also attached to the petition and incorporated by reference were a March 27, 2000 "Settlement Agreement" and "Water Distribution Agreement" that purported to resolve past disagreements between the City and County concerning the City's provision of water and wastewater services to a County-owned corrections facility located outside the City limits. The petition stated that, "Appellants believe that the Commission should consider in its decision the past history, including the Settlement Agreement . . . as well as the Water Distribution Agreement . . . which remains in effect."

The petition continued, "Appellants contend that the New Ordinance is invalid for the following reasons:"

(1)     it is not just and reasonable;
(2)     it is unreasonably preferential and discriminatory;
(3)     it is not sufficient, equitable and consistent to each class of customer;
(4)     it is not based upon a fair allocation of costs;
(5)     it is not based upon cost of service;
(6)     it would result in an unfair allocation of costs among classes of customers;
(7)     it would result in excessive transfers of both water and wastewater revenues over expenses to the City's general fund; and
(8)     it was based upon a Water and Wastewater cost of service and rate design study that is flawed, including that it contains absolutely nothing relevant to allocation of costs between classes of customers.

The petition requested the establishment of interim rates pending the TCEQ's final decision and "the establishment of rates that are just and reasonable."

The first page of the petition was signed at the bottom on behalf of the County by its constitutional county judge, then the Hon. Jimmy B. Galindo. Immediately following, at the top of the petition's second page, was the following statement, in boldface print:

8

**By signature below, I join the petition to appeal the adoption of the Town of Pecos City Ordinance No. 05-12-01 effective December 8, 2005, which adopted water and wastewater rates that are not just and reasonable to the Texas Commission on Environmental Quality.**

Below this statement were eleven numbered signature lines. The first nine lines had a name printed or typed beneath it. The first five signature lines also contained printed or typed street addresses for the respective signatories. The remaining signature lines left blanks for "NAME" or "ADDRESS," as appropriate. Lines one through eight, ten, and eleven were signed. In order, the signatures were "Jimmy B. Galindo," individually, "Peggy Cox," "Manuel Salcido," "Russ Salcido," "Hilda Garcia," "Belen Adame," "Herrera Industries," "Nicolas Valenzuela," "Yolanda Sandoval," and "Emeteria Sandoval." Each signatory provided a street address in either printed or hand-printed form, though only Herrera Industries also included a city or zip code. None included a phone number. Line nine, below which was printed the name "Daniel Valenzuela," was left blank.

At the top of the petition's third page was a bold-faced statement identical to that appearing at the top of the preceding page. Below this statement were signature lines numbered twelve through twenty-five. Signatures appearing on lines twelve through seventeen were, in order, "Billy W. Overcash," "Aurelio Lopez Jr.," "Aurelio Lopez," "Fred Brookshire," "Dene Lindsey," and "Wayne North." Each person also provided a street address but no additional contact information. The pages that followed consisted of the attachments—the new rates, old rates, Settlement Agreement, and Water Distribution Agreement.

On March 20, 2006, a TCEQ employee identifying her title as "Staff Auditor, Utilities and Districts Section, Water Supply Division" sent a "Notice of Deficiency" to the Ratepayers'

9

counsel. The Notice of Deficiency stated that "[y]our petition is incomplete and cannot be accepted for filing," but did not elaborate as to the nature of any defect other than to quote the language of rule 291.42(a) and to enclose the TCEQ's "Appealing a Rate Change Decision Made by a Board of Directors, a City Council, or County Commissioners" pamphlet that contained the "sample petition." Subsequent correspondence from the Ratepayers' counsel referenced a March 16 conversation during which, according to counsel, the TCEQ Staff Auditor had "indicated that the petition . . . was deficient because we did not use a TCEQ form" and that counsel had "disagreed and stated that neither section 13.043 nor rule 291.42, nor any other statute or regulation, required that we use a TCEQ form." The Notice of Deficiency gave the Ratepayers a deadline of April 7, 2006 to "submit a signed petition with the above information . . . or your petition will be return [sic] for failure to prosecute."

The Ratepayers filed a second version of their petition on April 7, 2006.[3] Although it retained the same basic structure and the original—a first page stating the Ratepayers' intent to appeal and their grounds, then signature pages, followed by the same attachments as with the original—its contents were much more elaborate. The first page was identical to that of the original, including incorporating the attachments by reference, but (1) added a statement that "[c]orrespondence to the rate payers' representative may be directed to" their counsel, and providing counsel's mailing address, phone number and fax number[4]; (2) added the county judge's full mailing

---

[3] Although emphasizing that in his transmittal letter that he "continue[d] to believe that the use of a particular form is not a legal requirement," the Ratepayers' counsel stated that "as a courtesy and in an effort to accommodate your requests, we are enclosing a petition again executed by the same water and wastewater customers who executed the original." Counsel concluded, "We look forward to working with the Staff to reach a reasonable result."

[4] With the prior version, counsel had provided this same information in a transmittal letter.

10

address and phone number below his signature line; and (3) indicated that the City's city manager and city attorney were copied, and indicating their respective mailing addresses and phone numbers.

The next component of the Ratepayers' petition, the signature pages, began with the following statement:

> By signature below, I join the petition to appeal the adoption of the Town of Pecos City Ordinance No. 05-12-01 effective December 8, 2005 which adopted water and wastewater rates that are not just and reasonable to the Texas Commission on Environmental Quality.[5] I acknowledge that I have reviewed the attached schedule of water and wastewater rates effective December 8, 2005 and the schedule of water and wastewater rates in existence previous to that date.

The statement continued, "I agree to allow the following individual to act as my representative in this matter." Below this, once again, was the name, mailing address and phone number for the Ratepayers' counsel. Following counsel's contact information, the document stated that "[t]he address and phone number of the utility is as follows," and provided the mailing address and phone number for the City's water and wastewater department.

Following the utility's contact information were signature blocks numbered one through three. In each, a designated line was provided for "Signature." Below this were the person's printed or typed "Name," "Address," and "Phone Number."[6] Unlike in the original version, the

---

[5] The first sentence was identical to the statement that had appeared at the top of the signature page in the petition's original version.

[6] Each signature block appeared in the following format:

```
1.    Signature:    [signed] Jimmy B. Galindo
      Name:         Jimmy B. Galindo
      Address:      [street address in original]
                    Pecos, Texas 79772
      Phone No:     (432) 445-[number in original]
```

11

second version provided the full mailing address of each signatory, plus a phone number, except for one individual who indicated that he did not have a phone.[7] Below the third signature block, the sequence repeated itself—the statement of acknowledgments, followed by contact information for the Ratepayers' counsel and the utility, then three more signature blocks—with the sequence repeating throughout the remainder of the document until concluding with a final set of two signature blocks, sixteen and seventeen.

The signature blocks were numbered continuously one through seventeen. The printed or typed names in the signature blocks corresponded to the names that had been printed on and/or signed on the earlier version of the petition, and were in the same order.[8] Twelve of

---

[7] Every address was in "Pecos, Texas 79772" and every phone number was in area code 432 and had the prefix 445.

[8] The signature blocks were in the following order:

1. Jimmy B. Galindo
2. Peggy Cox
3. Manuel Salcido

4. Russ Salcido
5. Hilda Garcia
6. Belen Adame

7. Herrera Industries
8. Nicholas Valenzuela
9. Daniel Valenzuela

10. Yolanda Sandoval
11. Emeteria Sandoval
12. Billy W. Overcash

13. Aurelio Lopez, Jr.
14. Aurelio Lopez
15. Fred Brookshire

16. Dene Lindsey
17. Wayne W. North

the persons who had signed the earlier version of the petition also signed the second version—Jimmy B. Galindo individually, Peggy Cox, Manuel Salcido, Russ Salcido, Hilda Garcia, Belen Adame, Herrera Industries, Yolanda Sandoval, Emeteria Sandoval, Billy W. Overcash, Fred Brookshire, Dene Lindsey, and Wayne North—plus Judge Galindo, on behalf of the County. Three of the earlier signatories did not, Nicolas Valenzuela, Aurelio Lopez Jr., and Aurelio Lopez. One individual whose name had been printed on the original version but had not signed it, Daniel Valenzuela, signed the second version.

The first page of the revised petition, followed by the repeating sequence of acknowledgments, counsel and utility information, and signature blocks, is contained within a single eight-page document. TCEQ places great emphasis on the fact that the page breaks occur at irregular intervals that separate all or part of the acknowledgments and/or counsel and utility information from their corresponding set of signature blocks that follow them. For example, although signature blocks one through three (Jimmy B. Galindo, Peggy Cox, and Manuel Salcido) appear on page three of the petition, four lines of the preceding acknowledgment—"By signature below, I join the petition to appeal the adoption of the Town of Pecos City Ordinance No. 05-12-01 effective December 8, 2005 which adopted water and wastewater rates that are not just and reasonable to the Texas Commission on Environmental Quality. I acknowledge that I have reviewed the attached schedule . . ."—actually appear at the end of page two. Similarly, following signature block three, at the bottom of page three appear five lines of the acknowledgment that precedes signature blocks four through six, while the signature blocks themselves (Russ Salcido, Hilda Garcia, and Belen Adame) appear on the following page four. The page breaks recur at similar intervals

13

throughout the document such that signature block groups four through six, seven through nine (signed by Herrera Industries and Daniel Valenzuela), ten through twelve (Yolanda Saldoval, Emeteria Sandoval, and Billy W. Overcash), and thirteen through fifteen (signed only by Fred Brookshire, no. 15) actually appear *above* the full text of the acknowledgment (which, again, begins with "By signature below . . ."). Thus, on each of these pages, the entire text of the acknowledgment appears somewhere on the page, although it appears either in portions split above and below the signature blocks or appears in full below them. However, on the last page of the document, containing signature blocks sixteen and seventeen (Dene Lindsey and Wayne North), no portion of the acknowledgment appears.[9]

Curiously, the administrative record also contains, alongside the March 2006 Notice of Deficiency, a one-page document titled "City of Pecos Outside City Limit Water/Wastewaster Customers As of 12-13-05." As TCEQ observes in its appellate briefing, this document "bears a fax notation indicating that it was faxed from the City of Pecos" and "consists of 55 names."[10] Elsewhere in the agency record, alongside the Ratepayers' second version of their petition, is a fax cover sheet bearing fax notations that correspond to those on the "City of Pecos Outside City Limit Water/Wastewaster Customers As of 12-13-05" list. The fax cover sheet, bearing Town of Pecos City letterhead, is dated May 11, 2006, and indicates a two-page transmission from

---

[9] Although the record is silent regarding an explanation for the irregular pagination, the Ratepayers' counsel represented during oral argument that counsel had emailed an electronic version of the petition to their clients, who then printed the document at their end, and that the page settings of their respective computers or printers apparently differed. In any event, as we explain below, the pagination of the second petition version is ultimately irrelevant.

[10] Brief of Appellee Texas Commission on Environmental Quality at 19 n.53.

14

the city manager to the TCEQ Staff Auditor. On the cover sheet is a space for "subject matter" and the following: "outside city limits—Rate customers." *See* Tex. Water Code Ann. § 13.043(i).

TCEQ acknowledges that this faxed list represents City outside ratepayers whose rates had been changed by the December 8, 2005 ordinance. Pointing to the list, TCEQ observes that because the petition was required to "be received from 10% of the ratepayers whose rates have been changed," "six signatures were required in this case."[11] In this list of 55 outside ratepayers whose rates had changed appear the names of fifteen of the sixteen individuals whose signatures appear on the Ratepayers' original petition,[12] plus the County detention facility. The list similarly contained the County and all thirteen individual signatories on the second version of the petition. *See id.* § 13.043(b)(3), (c) (authorizing outside ratepayers to appeal municipal rate-making decision if petition signatures are obtained from at least ten percent of ratepayers who "reside outside the corporate limits of the municipality" and "whose rates have changed.").

On May 26, 2006, the Ratepayers' counsel wrote the TCEQ Staff Auditor noting difficulty "reaching you by phone," requesting a status conference regarding their petition, and urging that she "communicate to me the current status of TCEQ processing of the application, as well as the next anticipated step."

In a letter dated June 7, the TCEQ Section Manager, Utilities and Districts Section, Water Supply Division, wrote the Ratepayers' counsel advising that "[y]our response" to the Notice of Deficiency "does not conform to 30 TAC §291.42" and, "[t]herefore, referenced petition

---

[11] *Id.* at 19 & n.53.

[12] The sole exception was Aurelio Lopez, Jr.—only one "Aurelio Lopez" appears on the list.

15

is being returned for failure to prosecute." The Ratepayers then filed with the TCEQ commissioners a "Motion for Reconsideration of Executive Director's Decision of June 7, 2006 to Return Petition for Failure to Prosecute."[13] The agency extended its own time to act on the motion until August 4 and invited the City, its executive director, and the TCEQ's Office of Public Interest Counsel to submit briefing. In his brief, the Executive Director justified his staff's rejection of the Ratepayers' appeal for "failure to prosecute" on three grounds:

- "The ED's interpretation of 'a concise description of the rate action'" in rule 291.42 "requires a petition to include both the old and new rates." In the Executive Director's view, the Ratepayers failed to meet this standard because they "did not include their prior rates [but] only attached a schedule of the new rates." "By not including the old rates," he reasoned, "Petitioners failed to describe the rate increase that they were appealing."

- To ensure that the signatures on a petition are those of ratepayers of a municipally-owned utility who reside outside the municipality's corporate limits, the Executive Director urged, "the TCEQ must strictly enforce 30 Tex. Admin. Code § 291.42(2)" to "require[] that a ratepayers' signature . . . be on each page that contains the description of the rate action. The rationale behind this requirement is to ensure that each signature is that of a ratepayer who resides outside of the city limits. Because some petitions can contain hundreds if not thousands of signatures, it is unreasonable to assume that the ED would be able to confirm that each signature is valid and for the petition that is being submitted." The Executive Director maintained that "[i]n the Revised Petition, Petitioners submitted signatures that were not on the same page as the statements that they were attesting to." He reasoned that "Petitioners' failure to include signatures on the same page as a clear concise statement describing their rate action makes it impossible for the ED to conclude that the Petitioners' signatures are valid."

---

[13] The TCEQ commissioners by rule have delegated to the agency's executive director authority to act on administratively complete appeals of rate matters under chapter 13 of the water code. 30 Tex. Admin. Code § 50.131(a), (b)(12) (2006). The TCEQ rules permit the executive director's decisions pursuant to this delegation to be appealed to the TCEQ commissioners. *See id.* § 50.139 (2006). The parties have followed this procedural framework in regard to the TCEQ staff's dismissal of the Ratepayers' appeal.

• In the original version of their petition, the Ratepayers failed to include the phone number for each signatory. The Executive Director did not dispute that the second version of the Ratepayers' petition contained phone numbers for each signatory.

The TCEQ's Office of Public Interest Counsel, on the other hand, argued that the Ratepayers had met the basic requirements of rule 291.42, substantially complied with "the extra information required by the TCEQ Pamphlet," and, in any event, did not "fail to prosecute their appeal." The City also filed briefing in support of the TCEQ staff's action, and the Ratepayers filed a reply.

The deadline for the TCEQ commissioners to act was subsequently extended until August 24, 2006. That date passed without the commissioners taking action on the Ratepayers' "Motion for Reconsideration." TCEQ gave notice to the ratepayers that their motion was overruled by operation of law. Citing what it regarded as ambiguities as to appellate remedies, the Ratepayers, "in an abundance of caution," filed both a motion for rehearing of the commissioners' failure to act on their motion for reconsideration as well as a suit for judicial review of that action. After the Ratepayers' motion for rehearing was overruled by operation of law, they filed a second suit for judicial review concerning that action. The two administrative appeals were subsequently consolidated. On July 27, 2007, the district court rendered judgment affirming the TCEQ's decision. The County then appealed to this Court.

**ANALYSIS**

The County brings two issues on appeal. In its first issue, the County contends that the record does not support TCEQ's decision to reject or dismiss the Ratepayers' appeal to TCEQ for "failure to prosecute" because the Ratepayers "timely and diligently pursued the filing" and each

17

version of their petition complied with the essential purposes, if not the letter, of rule 291.42. In their second issue, the County suggests that TCEQ relied not on any violation of rule 291.42, properly construed, but upon the Ratepayers' perceived failure to conform their petitions to additional staff-imposed requirements reflected in the sample petition contained in the TCEQ's "Appealing a Rate Change Decision Made by a Board of Directors, a City Council, or County Commissioners" pamphlet. Because the pamphlet was neither adopted through formal rulemaking under the Administrative Procedures Act, *see* Tex. Gov't Code Ann. § 2001.003(6) (West Supp. 2008), nor indexed and made available for public inspection, *see id.* §§ 2001.004-.006 (West 2000), the County urges that the requirements reflected therein are void and unenforceable to the extent they exceed those contained in rule 291.42 itself.

In its brief on appeal, TCEQ responds by criticizing the County's brief as "not conventionally organized," dismissing certain of the County's arguments as "incomprehensible and irrelevant and should be disregarded by this Court," and maintaining that its dismissal of the Ratepayers' appeal for noncompliance with its interpretation of rule 291.42 is "reasonable" and supported by substantial evidence. Counsel admonishes that this Court "should not second-guess TCEQ as to the dispositive weight it accorded the defects in [the Ratepayers'] petition," which the agency regards as "so great as to require the return of the petition."

Under the substantial evidence rule, we shall reverse or remand an agency decision for further proceedings if an appellant's substantial rights have been prejudiced because administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful

18

procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Id.* § 2001.174(2) (West 2000). In sum, we review agency fact findings for support by substantial evidence, review legal conclusions for errors of law, and the proper test is whether the evidence in its entirety is such that reasonable minds could have reached the conclusion that the agency must have reached to justify its decision or whether the agency acted arbitrarily and without regard to the facts. *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied).

Integral to our analysis is construction of TCEQ's rules. "We construe administrative rules, which have the same force as statutes, in the same manner as statutes." *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). "Unless the rule is ambiguous, we follow the rule's clear language." *Id*. Although we defer to an agency's interpretation where there is vagueness, ambiguity, or room for policy determinations in the regulation, we cannot defer to an administrative interpretation that is plainly erroneous or inconsistent with the regulation or the underlying statute. *Id.* at 254-55 (quoting *Public Util. Comm'n of Tex. v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex. 1991)); *Gates v. Texas Dep't of Family and Protective Servs*., 252 S.W.3d 90, 98 (Tex. App.—Austin 2008, no pet.); *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group.*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied).

19

To the extent our analysis turns on any TCEQ determinations of underlying facts,[14] we consider the reliable and probative evidence in the record as a whole to determine whether it is such that a reasonable mind might accept it as adequate to support those conclusions of fact. Tex. Gov't Code Ann. § 2001.174(2)(E); *Hinkley v. Texas State Bd. of Med. Exam'rs*, 140 S.W.3d 737, 743 (Tex. App.—Austin 2004, pet. denied). The agency determines the meaning, weight, and credibility to assign conflicting evidence, *Texas State Bd. of Med. Exam'rs v. Scheffey*, 949 S.W.2d 431, 437 (Tex. App.—Austin 1997, pet. denied), and we may not set aside an agency decision because testimony was conflicting or disputed or because it did not compel the agency's decision. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1996). We are ultimately concerned with the reasonableness of the agency's order, not its correctness. *See id.* The crux of a substantial evidence analysis is whether the agency's factual findings are reasonable "in light of the evidence from which they were purportedly inferred." *Id.* (citing John E. Powers, Agency Adjudications 163 (1990)).

We presume that the TCEQ's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the County has the burden to prove otherwise. *Granek v. Texas State Bd. of Med. Exam'rs*, 178 S.W.3d at 761, 778 (Tex. App.—Austin 2005, no pet.). Whether the TCEQ decision was supported by substantial evidence is a question of law. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000). The district court's

---

[14] As TCEQ acknowledges, because of its rejection of the Ratepayers' petitions, their "appeal to TCEQ self-destructed at the initial stage instead of moving forward to a traditional contested case hearing and final adjudicative order." Consequently, the administrative record is limited to the filings before the agency when it was acting on the petitions.

judgment affirming the agency decision is thus not entitled to deference on appeal. *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam). On appeal of that judgment, we consider the same question presented to the district court: whether the TCEQ's decision was supported by substantial evidence. *See Montgomery*, 34 S.W.3d at 562.

We begin by noting a few undisputed facts from the record. As TCEQ acknowledges, the "City of Pecos Outside City Limit Water/Wastewaster Customers As of 12-13-05" lists 55 ratepayers who reside outside the City's municipal boundaries and whose rates were changed. It also acknowledges that the list was faxed to TCEQ from the City. The record contains a corresponding fax cover sheet indicating that the city manager faxed the document to the TCEQ Staff Auditor who reviewed the petitions. The date of the transmission was May 11, 2006—while TCEQ staff was considering the Ratepayers' appeal. The list of 55 outside ratepayers whose rates had been changed included sixteen of the seventeen persons who signed the Ratepayers' original petition and all fourteen persons who signed their revised petition. The Ratepayers were required to obtain only six signatures from outside ratepayers whose rates had been changed in order to appeal the rate change under section 13.043(b)(3) of the water code. *See* Tex. Water Code Ann. § 13.043(b)(3), (c). The Ratepayers thus obtained more than double the statutorily-required minimum in each of their two petitions.

The record, in short, leaves no room for reasonable disagreement that both versions of the Ratepayers' petition contained the requisite number of signatures of persons who, in fact, possessed the "two qualifications" of living outside the City and having had their rates changed. Even if there was any reasonable question in that regard, the record demonstrates, at a minimum, the

21

ease with which the TCEQ staff could have verified that at least six of the names signed on the Ratepayers' petitions were those of persons who were outside ratepayers and had their rates changed. The City, as the legislature contemplated in section 13.043(i) of the water code, knew the identities of its outside ratepayers who had their rates changed. Here, that information was contained in a single-page document listing 55 names. TCEQ obtained that document from the City via fax. To verify that a sufficient number of signed names were those of outside ratepayers whose rates had changed, TCEQ staff needed only to compare the names on the petitions to the names on the list and find a mere six that corresponded.

Nonetheless, TCEQ maintains that it properly dismissed the Ratepayers' appeal because they did not include on each signature page a recitation of the Ratepayers' old and new rates and, in that manner, demonstrate that the signatures were "from people whose rates have been changed." It is necessary to "strictly enforce" this requirement, the agency has insisted, "[b]ecause some petitions can contain hundreds if not thousands of signatures" and it would be "unreasonable" if not "impossible" for the agency staff to verify the signatories' qualifications in any other way. On appeal, TCEQ presses this logic a step farther, arguing that the Ratepayers' attachment and incorporation of their old and new rates by reference was not sufficient because the agency could not ascertain from these documents that each signatory's rates had, in fact, changed.[15] The irony of such reasoning in this case is that, again, the record establishes that both of the

---

[15] This argument is somewhat inconsistent with the position advanced by the Executive Director in his briefing to the TCEQ commissioners. While acknowledging that the Ratepayers "attached a schedule of the new rates" to the second version of their petition, the flaw he identified was the Ratepayers' supposed failure to "include their prior rates." On appeal, TCEQ has appeared to concede that the petitions attached charts of both the old and new rates, though it insists that it cannot discern from the charts the specific rates that each signatory has been charged.

22

Ratepayers' petitions, in fact, contains more than double the required number of signed names of ratepayers who resided outside the City and whose rates had been changed. At a minimum, the record demonstrates that it was hardly "impossible" or "unreasonable" for the agency staff to confirm that fact based on the information the Ratepayers had provided.

TCEQ's application of its requirement that each petition signature page contain a recitation of the ratepayers' old and new rates was thus wholly unmoored from its underlying rationales. The agency's dismissal of the Ratepayers' appeal on that basis must ultimately rest on the notion that it can throw out the appeal based on the bare conclusion that the Ratepayers committed a technical violation of rule 291.42, without regard to whether the Ratepayers actually satisfied the statutory conditions to appeal or how easily that fact could have been verified. That notion is squarely inconsistent with the TCEQ's rules and the underlying statutes that the rules are intended to implement. The legislature has mandated that if more then ten percent of a municipally-owned utility's outside ratepayers whose rates had changed sign a petition to appeal the municipality's rate-making decision, they have the right to appeal to TCEQ. *See id*. § 13.043(b)-(c). The Ratepayers met those conditions. The TCEQ's interpretation and application of rule 291.42 has subverted the legislature's intent and deprived the Ratepayers of their statutory rights, and is invalid. *See Gates*, 252 S.W.3d at 98 (rejecting agency rule construction that deprived a party of an administrative remedy provided by statute).

Nor do the TCEQ's rules purport to grant the agency authority to dismiss appeals based on the bare fact that a petition omits a "concise description" of the signatories' rate change and/or a recitation of their old rates and new rates. TCEQ's rules do not prescribe any consequence for failing to comply with rule 291.42, much less the outcome-determinative sanction of dismissal

23

for "failure to prosecute." To the contrary, TCEQ, again, characterizes these requirements as mechanisms necessary to enable it to ascertain whether petition signatories meet the underlying statutory requirements of being outside ratepayers whose rates have changed. Whatever authority TCEQ would possess under this scheme to dismiss an attempted appeal would, consequently, derive from the petitioners' failure to satisfy the statutory conditions to appeal, not because the petitioners violated rule 291.42, per se. In short, nothing in these rules makes compliance with rule 291.42 an outcome-determinative end unto itself. TCEQ has not supplied the Court with any citation or reference to authority to suggest otherwise.

On this record, TCEQ's dismissal of the County's appeal for failure to include recitations of the Ratepayers' old and new rates is inconsistent with the agency's rules and the statutes governing appeals under section 13.043(b), is arbitrary and capricious, and is not supported by substantial evidence. *See id.* Our analysis is also informed by the Texas Supreme Court's recent jurisprudence concerning the election code's requirements that candidates for certain offices obtain petition signatures from registered voters eligible to vote for the office the candidate is seeking. The supreme court has held that statutory requirements that signatories provide such information as their residence address, city, zip code, and voter registration numbers, even though stated in mandatory terms, are not inflexible technicalities that must be met in every case lest the signature be invalidated. Instead, the court has held that such requirements must be applied in light of their underlying purposes of enabling verification of the signatures as those of registered voters eligible to vote for the office and thereby qualified to sign the petition. *See In re Bell*, 91 S.W.3d 784, 787-88 (Tex. 2002). For example, in *Bell*, the supreme court held that where certain persons signing the petition for a Harris County justice of the peace candidate provided their birth dates, street names

and numbers, county and voter registration numbers, but not their city of residence as required by the election code, their signatures were not invalid because their city of residence would not aid in determining their eligibility to vote in the election for that particular office and the other information was sufficient to allow such verification. *Id.* The court's analysis was derived in part from the code construction act's guidance that codes should be construed to the end of a "just and reasonable" result in light of the "object sought to be attained" by the enactment. *Id.* at 787 ("if the information omitted will not aid in determining the signer's voting eligibility for a particular election, invalidating the signatures is not a 'just and reasonable result' in light of the object 'sought to be obtained' by the statute."); *see* Tex. Gov't Code Ann. §§ 311.021(3), .023(1) (West 2005). Here, like the supreme court in *Bell*, we apply a reasonableness standard—substantial evidence—and similarly conclude that TCEQ fell below that standard when dismissing the Ratepayers' appeal for omitting information wholly unnecessary to effect the purposes for which that information is required.

TCEQ also argues that it could dismiss the Ratepayers' appeal because the irregular pagination of the Ratepayers' revised petition somehow created a risk that the signatories did not "knowingly and intentionally"appeal their rate change. We observe that thirteen individuals, plus the County, signed both versions of the petition; that the original stated in bold print at the top of each signature page that "**I join the petition to appeal the adoption of the Town of Pecos City Ordinance No. 05-12-01 effective December 8, 2005, which adopted water and wastewater rates that are not just and reasonable to the Texas Commission on Environmental Quality**"; and that the revised version contained even more elaborate acknowledgments on virtually all signature pages, although such language sometimes appeared below the signatures.

25

TCEQ's suggestions that these persons somehow would have missed the fact that they were protesting their new water rates is unreasonable and not supported by substantial evidence.

The County has not challenged whether TCEQ had statutory authority to adopt rule 291.42 as a means of administering the petition requirements of section 13.043 of the water code, and we intend no comment on that question. Nor is it necessary for us to reach the County's contentions that TCEQ's requirement that petitioners recite their old and new rates on each petition signature page is inconsistent with rule 291.42 or constitutes a new "rule" not validly adopted under the APA. We are likewise not addressing circumstances that might be present in other rate appeals, such as those involving municipalities that might have larger numbers of outside ratepayers. We hold only that, on this record, TCEQ's decision to dismiss the Ratepayers' appeal is not supported by substantial evidence, for reasons we have explained. We reverse the TCEQ's decision dismissing the appeal and the district court's judgment affirming that action. We remand this matter to the TCEQ for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Remanded

Filed:   August 28, 2008

26