322 F.3d 1290
 Curtis SMITH, a minor, who sues by & through his mother & next friend, Joyce SMITH, Plaintiff-Appellee,
v.
Don SIEGELMAN, in his personal capacity, Bob Riley, in his official capacity as Governor of AL, Bill Pryor, in his capacity as Attorney General of AL & in his personal capacity, et al., Defendants-Appellants.
 No. 02-10005.
 United States Court of Appeals, Eleventh Circuit.
 February 28, 2003.
 
 James Edward Long, Alabama Dept. of Human Resources, Montgomery, AL, for Defendants-Appellants.
 Roger C. Appell, Law Offices of Roger C. Appell, Birmingham, AL, for Plaintiff-Appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, WILSON and COWEN*, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 The sole issue in this interlocutory appeal is whether nine public servants, who are being sued for money damages in their individual capacities under 42 U.S.C. § 1983, are entitled to qualified immunity with respect to the claim that they violated plaintiff's Fourteenth Amendment rights by designating him a child abuser without first affording him a due process hearing.[1] The defendants raised their qualified immunity defense in a joint motion to dismiss the plaintiff's complaint; they asserted that the complaint showed on its face that they were immune from suit. The district court denied their motion to dismiss. We reverse.
 
 I.
 A.
 
 2
 Plaintiff Curtis Smith is a minor. In late February of 2000, the Hale County Department of the Alabama Department of Human Resources ("DHR") notified Smith (through a letter to his parents) that it was investigating him for the alleged sexual abuse of Deidra Minyard, also a minor. Following the notification, defendant Lucy Gallman, a social worker with the Hale County Department, contacted Smith's parents, requesting to interview Smith as part of the DHR's investigation. When Gallman insisted that she interview Smith without either parent present, Smith's parents refused the interview request. Smith's parents then retained an attorney, who attempted to arrange a meeting with Gallman. When Gallman again insisted that she meet with Smith alone — without the attorney or the parents in attendance — counsel refused to allow Smith to be questioned.[2] Two weeks later, on March 15, 2000, a complaint, citing the sexual abuse described above, was filed against Smith in the Tuscaloosa County, Alabama Juvenile Court. The following day, Smith was provided a Notification of Rights, which informed him of his right to remain silent and that anything he said to the authorities could be used against him.[3]
 
 
 3
 Approximately four months later, on June 7, 2000, Gallman and another social worker in the Hale County Department, defendant Rose Shadwrick, wrote Smith a letter stating, "Our investigation shows reasonable cause to believe that the report is `indicated,' i.e., true. An indicated disposition is used when there is more evidence than not, based on the professional judgment of the social worker, that child abuse/neglect has occurred." The letter explained that the DHR's decision of "indicated" was made following (1) "an interview with the child in which she reported that [Smith] caused her to perform oral sex and [that Smith] put [his] penis in her vagina," and (2) interviews with "family members, professionals and collaterals." The letter further informed Smith that he could have the decision reviewed by a "DHR independent panel," whose decision was "final."
 
 
 4
 A week later, on June 14, counsel for Smith responded to the June 7 letter, demanding "an independent due process hearing with the opportunity to present testimony and cross-examine those who have made these serious, but untrue charges." The DHR responded to Smith's request on July 12, with a letter stating:
 
 
 5
 The D[HR] is in receipt of your request for an administrative record review.... This D[HR] record review will be conducted by an independent panel. Persons reviewing the record are not involved in the case and have the authority to overturn the worker's or supervisor's disposition if the record does not support this finding. You will be notified in writing within 90 days of the final disposition of this report by the independent panel.
 
 
 6
 After two months passed, on September 25, Smith received a letter from defendant Sharon Mintz, the Administrator CA/N Record Reviewer in the DHR's state office, informing him as follows:
 
 
 7
 We have completed our administrative record review on the above noted case. It has been determined that the [Hale] County Department does have enough credible evidence to support a disposition finding of "indicated," i.e., true. This report will be entered into the D[HR]'s Central Registry on Child Abuse and Neglect as an "indicated" incident.[4]
 
 
 8
 Smith's name and the report were subsequently entered into the DHR's Central Registry ("Registry"). The information on the Registry is made available to persons and entities, public and private, as provided by section 26-14-8(b) of the 1975 Alabama Code[5] and regulation 660-5-34-.07(d) of the Alabama Administrative Code.[6]
 
 B.
 
 9
 Smith responded to the placing of his name and the DHR report on the Registry by filing a complaint on November 29, 2000, in the Northern District of Alabama against nine individuals: several DHR employees (including Gallman, Shadwrick, and Mintz),[7] Alabama Governor Don Siegelman, and Alabama Attorney General William Pryor.[8] He sued each defendant in his or her official and individual capacities. The complaint alleged that the defendants had denied him due process of law under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983[9] by designating him a child sexual abuser without first holding an independent hearing and giving him an opportunity to present testimony and cross-examine witnesses.[10] The complaint also alleged that section 26-14-8(b) of the 1975 Alabama Code and regulation 660-5-34-.07 of the Alabama Administrative Code were unconstitutional, both facially and as applied to him.[11] Smith asked the court to enter an injunction barring the enforcement of those statutory and regulatory provisions, and requiring the defendants to remove all references to him from the Registry. Smith also sought compensatory damages, the relief at issue in this appeal.
 
 
 10
 The defendants jointly moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming, inter alia, immunity from Smith's suit. After holding a hearing, the district court entered a memorandum opinion and order partially granting and denying defendants's motion. In short, the court held that defendants were immune under the Eleventh Amendment in their official capacities for money damages, yet were not entitled to qualified immunity in their individual capacities.[12] Accordingly, the court granted the motion to dismiss the complaint for monetary relief against all defendants in their official capacities, but denied the motion as to all defendants in their individual capacities. In holding that defendants were not immune in their individual capacities from suits brought under § 1983, the court found that Smith had a clearly established liberty interest in not being labeled a child abuser and not having that information released to members of the public, and that such interest was violated when Smith did not receive sufficient procedural due process. Defendants thereafter lodged this appeal on the issue of their qualified immunity.
 
 II.
 A.
 
 11
 We have jurisdiction to review the denial of the defense of qualified immunity pursuant to 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The qualified immunity defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint "fails to allege the violation of a clearly established constitutional right." Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir.2001) (quoting Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir.1997)). Whether the complaint alleges the violation of a clearly established right is a question of law which we review de novo, accepting the facts alleged as true and drawing all reasonable inferences therefrom in the plaintiff's favor. Id.
 
 B.
 
 12
 Qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation," Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002), by ensuring that only "the plainly incompetent or those who knowingly violate the law" are subjected to liability. Chesser, 248 F.3d at 1122 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Vinyard, 311 F.3d at 1346 (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002) (internal quotation marks omitted)). If the defendants were not acting within their discretionary authority, they are ineligible for the benefit of qualified immunity. See Lee, 284 F.3d at 1194. Here, it is clear that the defendants were acting — if they acted at all — in their discretionary capacities when they caused Smith's name and the DHR report to be added to the Registry.
 
 
 13
 Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. Vinyard, 311 F.3d at 1346. The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake ... is whether plaintiff's allegations, if true, establish a constitutional violation." Id. (quoting Hope, 122 S.Ct. at 2513). If a court finds the violation of a constitutional right under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). Accordingly, we first determine whether the defendants's alleged conduct violated Smith's constitutional rights.
 
 III.
 A.
 
 14
 Smith claims that the defendants violated his Fourteenth Amendment right to due process when they placed his name and the DHR report on the Registry without providing him the opportunity to present testimony and examine witnesses. Nowhere in his complaint, however, does Smith make any allegation that defendants Siegelman, Pryor, Fuller, Petelos, Muscolino, and Smith were involved in the child abuse investigation or in the placing of his name on the Registry. Nor does the complaint allege any causal connection between the deprivation of Smith's right to due process and these six defendants. Rather, Smith appears to sue these six individuals solely on the basis of their supervisory authority over the other three defendants — Gallman, Shadwrick, and Mintz. See Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999) ("It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.") (citation and internal quotation marks omitted). Since Smith has failed to provide any facts indicating that these six defendants participated in, or even were aware of, the DHR investigation of Smith or the placing of Smith's name on the Registry, there obviously is no constitutional violation. Without a constitutional violation, there can be no violation of a clearly established right. Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 792 (11th Cir.1992). Accordingly, the district court erred in failing to grant Siegelman, Pryor, Fuller, Petelos, Muscolino, and Smith qualified immunity on the plaintiff's due process claim.
 
 B.
 
 15
 As for the remaining three defendants — DHR employees Gallman, Shadwrick, and Mintz — Smith's complaint does not show how they participated, if at all, in the decision to deny him a hearing, that is, a hearing held on the terms dictated by his attorney.[13] Nor does the complaint assert that any of these defendants placed his name and the DHR report on the Registry. In short, the complaint fails to describe how the acts of these defendants infringed Smith's due process rights. Nonetheless, we will assume for sake of discussion that these three defendants played a significant role in the decision to deny Smith the sort of due process hearing he sought.
 
 
 16
 With any due process challenge, we must initially determine whether the injury claimed by the plaintiff is within the scope of the Due Process Clause. See Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1436 (11th Cir.1998). The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. Clearly, Smith was not deprived of life or property. The central issue is thus whether Smith has sufficiently alleged the deprivation of a protected "liberty" interest. We conclude that Smith has not sufficiently shown such a deprivation.
 
 
 17
 Smith alleges that "he has a liberty interest in not being designated by the defendants ... as having perpetrated a sexual abuse or offense on a child." There is no question that the child sexual abuse allegations here may stigmatize a person and give rise to a liberty interest. See Hardiman v. Jefferson County Bd. of Educ., 709 F.2d 635, 638 (11th Cir.1983) ("There is no question that the nature of the charges here [male teacher accused of touching female student on buttocks and breasts] are such that they may stigmatize a person ...."); see also Kirby v. Siegelman, 195 F.3d 1285, 1292 (11th Cir.1999) (quoting A.J. Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir.1997)) ("[W]e can hardly conceive of a state's action bearing more `stigmatizing consequences' than the labeling of ... sex offender."). Nevertheless, precedent of the Supreme Court and this court clearly indicate that stigmatization by itself is insufficient to rise to the level of a protected liberty interest.
 
 
 18
 The Supreme Court in Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976), held that a person's interest in reputation alone, "apart from some more tangible interests such as employment," is not a protected liberty interest within the meaning of the due process clause. "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302-03 (11th Cir.2001) (quoting Moore v. Otero, 557 F.2d 435, 437 (5th Cir.1977)).[14] In other words, a "stigma-plus" is required to establish a constitutional violation. Moore, 557 F.2d at 437. We think that Smith's complaint fails to satisfy the "plus" requirement.
 
 
 19
 The complaint does not at any point allege that Smith was denied any right or status other than his not being branded a child sexual abuser. Smith has not contended that he was discharged, demoted, or rejected from a job due to the information on the Registry. See Von Stein v. Brescher, 904 F.2d 572, 582 (11th Cir.1990) ("We do not think the law of this Circuit has established that defamation occurring other than in the course of dismissal from a job or in the termination or significant alteration of some other legal right or status will suffice to constitute a deprivation sufficient to state a claim under section 1983."); see also Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir.2000) ("[W]hen reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983.") (emphasis added); Dennis v. S&S Consol. Rural High School Dist., 577 F.2d 338, 342 (5th Cir.1978) ("[S]tigma to reputation in conjunction with a failure to rehire a nontenured employee states a claim under § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process.") (emphasis added). Nor has he even contended that he was passed over for promotion. See Cannon, 250 F.3d at 1303 (holding that a transfer or a missed promotion is not enough to establish the "plus" element of the stigma-plus test). In short, Smith has not alleged that he has suffered any loss of employment, any diminution of salary, or anything else that "would ... qualify as `some more tangible interest[],' as required by Paul." United States v. Sigma Int'l, Inc., 300 F.3d 1278, 1280 (11th Cir.2002) (en banc) (per curiam) (citation omitted).
 
 
 20
 Nonetheless, the district court concluded that the "plus" prong was satisfied, because under Alabama Code § 26-14-8(b) and Alabama Administrative Code r. 660-5-34-.07(d) the information on the Registry is made available to an employer or potential employer where the employment involves care or supervision of children. The court surmised:
 
 
 21
 If [Smith] were to choose to teach elementary or secondary school, to work in daycare, to work with the Boy Scouts, to join law enforcement, [or] to gain custody of children he may have, DHR's record of him as a child sex abuser would negatively impact (or prevent) his ability to work in these positions and his custody rights as a parent.... [Smith]'s ability to purse the employment of his choice, among other rights, is affected.
 
 
 22
 We agree that Smith's employment and custody rights in the future could be affected adversely due to the information on the Registry, but the district court's conjecture overlooks Paul's insistence that reputational damage alone is insufficient to constitute a protected liberty interest. It also overlooks statements in a later Supreme Court decision:
 
 
 23
 Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action.[15]
 
 
 24
 Siegert v. Gilley, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) (emphasis added). In other words, the deleterious effects that flow directly from a sullied reputation, such as the adverse impact on job prospects, are normally insufficient. Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir.1994). Plaintiff must show that the defendants's conduct "deprived [him] of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." Cypress Ins. Co., 144 F.3d at 1436-37. Smith here has failed to do so. Since Smith has failed to allege the violation of a constitutional right, defendants Gallman, Shadwrick, and Mintz are entitled to qualified immunity on Smith's due process claim.[16]
 
 IV.
 
 25
 For the foregoing reasons, the decision of the district court denying the defendants qualified immunity is reversed.
 
 
 26
 REVERSED.
 
 
 
 Notes:
 
 
 *
 Honorable Robert E. Cowen, United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 The plaintiff, Curtis Smith, is a minor; he brought suit by and through his mother and next friend, Joyce Smith. Our references to the plaintiff are to Curtis Smith
 
 
 [2]
 Gallman also informed Smith's attorney that a police representative would attend the Smith interview
 
 
 [3]
 Smith's complaint does not indicate what transpired in the juvenile court — for example, it does not indicate the complaint's final disposition. During oral argument before this panel, Smith's attorney represented that the juvenile court matter was pending on November 29, 2000, when Smith filed the instant law suit, and that he made no effort to have the DHR proceedings stayed pending the final disposition of the juvenile court case
 
 
 [4]
 Alabama Code § 26-14-8(a) (1975) requires the establishment of "a statewide central registry for reports of child abuse and neglect." Included in the registry is "[a]ll information in the written report" and the "Record of the final disposition of the report."
 
 
 [5]
 Section 26-14-8(b) provides, in pertinent part:
 The reports and records of child abuse and neglect and related information or testimony shall be confidential, and shall not be used or disclosed for any purposes other than:
 (1) To permit their use to prevent or to discover abuse or neglect of children through the information contained therein; or
 (2) For investigation of child abuse or neglect by the police or other law enforcement agency; or
 (3) For use by a grand jury upon its determination that access to such reports and records is necessary in the conduct of its official business; or
 (4) For use by a court where it finds that such information is necessary for the determination of an issue before the court; or
 (5) For use by any person engaged in bona fide research who is authorized to have access to such information by the Commissioner of the State Department of Pensions and Security; or
 (6) For use by any person authorized by a court to act as a representative for an abused or neglected child who is the subject of a report; or
 (7) For use by a physician who has before him a child whom he reasonably suspects may be abused or neglected; or
 (8) For use by an attorney or guardian ad litem in representing or defending a child or its parents or guardians in a court proceeding related to abuse or neglect of said child.
 
 
 [6]
 Regulation 660-5-34-.07(d) essentially tracks the language of the statute. Subsection 9 of that section provides additional guidelines regarding the availability of information to employers:
 Upon approved request, [disclosure is available] to an employer or potential employer of an employee where the employment involves care or supervision of children or other vulnerable persons. An employer is one who engages persons for either paid or voluntary positions. This would include a public or private child-care agency, center or institution in clearing persons who are applying for employment or to be foster or adoptive parents. This would include organizations such as Boy Scouts, Girl Scouts, summer camp programs, YMCA, etc.
 
 
 [7]
 The remaining DHR employees named as defendants were as follows: (1) Bill Fuller, Commissioner of the Alabama DHR; (2) Tony Petelos, Commissioner of the Alabama DHR; (3) Patricia Muscolino, Director of the Hale County Department of the DHR; and (4) Margaret Smith, that department's Interim Director
 
 
 [8]
 Smith also named the DHR's Hale County Department as a tenth defendant. Because that department is not a party to this appeal, our references to the defendants are limited to the individual defendants
 
 
 [9]
 42 U.S.C. § 1983 provides, in pertinent part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [10]
 The complaint also alleged that defendants had denied him his due process rights under the Fifth and Sixth Amendments to the United States Constitution and infringed his rights under 42 U.S.C. § 1985. The district court dismissed these allegations for failure to state a claim for relief. Hence, these claims are not before us in this appeal
 
 
 [11]
 In the period of time since Smith filed his complaint and the district court made its ruling, the Alabama legislature amended § 26-14, with the substance of 26-14-8(b) supplanted by 26-14-8(c)
 
 
 [12]
 The district court allowed the plaintiff to pursue his § 1983 claims for injunctive relief against all defendants in their official capacities
 
 
 [13]
 As noted in the textsupra, Gallman was assigned the task of investigating the case. She wrote letters and met with Smith's parents and their attorney. The complaint states that "the defendants" wrote the July 12, 2000 letter informing the plaintiff that he would not be afforded a hearing on his attorney's terms. Nothing in the complaint suggests, much less alleges, that Gallman wrote the letter or decided what sort of hearing would be afforded. Shadwrick's role was, according to the complaint, limited to writing (along with Gallman) the June 7, 2000 letter informing the plaintiff of the results of the investigation and that he could ask a "DHR independent panel," made up of persons "not involved in the case," to review the results of the investigation. Mintz's role was limited to drafting the final letter to the plaintiff, dated September 25, 2000, which simply informed the plaintiff that the independent panel's review found support for the initial decision, and that his name and the DHR report would be added to the Registry. The complaint does not say what, if any, involvement Mintz had in that decision — other than acting as a conduit of information from the DHR to the plaintiff.
 
 
 [14]
 InBonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.
 
 
 [15]
 InBivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court upheld a cause of action for damages against federal officers based on violations of constitutional provisions. A Bivens action is analogous to § 1983 suits against state and local officers.
 
 
 [16]
 Because the plaintiff has failed to sufficiently allege a constitutional violation, there is no need to proceed to the next step of determining if a constitutional right was clearly established