# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00055-CV

### L.C., Appellant

### v.

### The Texas Department of Family and Protective Services, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-06-000484, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

L.C.[1] appeals the grant of a plea to the jurisdiction filed by the Texas Department of Family and Protective Services ("the Department"). A subdivision of the Department, Child Protective Services ("CPS"), investigated child abuse allegations against L.C. It determined that there was reason to believe L.C. had abused her children, and it placed L.C.'s name in a confidential, State-maintained registry of reported child-abuse cases. L.C. sought review of CPS's actions within the Department. The Departmental reviewers upheld CPS's child abuse determination, and L.C. then sought judicial review in Travis County District Court. The Department filed a plea to the jurisdiction, arguing that CPS's determination was not subject to judicial review. The trial court granted the Department's plea, and L.C. appealed. We will affirm.

---

[1] The record in this case is sealed because of its sensitive nature, so we refer to the appellant by her initials rather than her full name.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, CPS began investigating an allegation that L.C.'s husband abused one of the couple's children. As part of its investigation, CPS interviewed L.C.'s husband. During the interview, L.C.'s husband produced evidence that appeared to implicate L.C. in the children's abuse. Based on that evidence, CPS began investigating L.C. CPS did not notify L.C. that she had become the target of its investigation. L.C. was not interviewed during the investigation, was not allowed to comment on the evidence produced by her husband, and was not allowed to produce evidence of her own. CPS eventually made an administrative "summary finding" of "reason-to-believe," by a preponderance of the evidence, that L.C. was a "designated perpetrator" responsible for the "abuse of a child." *See* 40 Tex. Admin. Code Ann. §§ 700.511(b)(1), .512(b)(2) (West 2009). Accordingly, CPS placed L.C.'s name in a confidential registry of reported child-abuse cases. *See* Tex. Fam. Code Ann. § 261.002(a) (West 2008) (Department shall establish and maintain central registry of reported cases of child abuse and neglect).

Upon learning of CPS's abuse determination and the placement of her name in the abuse registry, L.C. sought and obtained a type of informal review within the Department known as an Administrative Review of Investigative Findings ("ARIF"). *See* 40 Tex. Admin. Code § 700.516(f). The record does not reveal the extent to which L.C. participated in the ARIF, but L.C. does not complain that she was denied her right to "appear, make statements, provide relevant written materials, . . . ask questions . . . [, or] be represented by another individual" at the ARIF. *Id*. The reviewer who conducted the ARIF upheld CPS's determination that a preponderance of the evidence indicated that L.C. had abused her children. *See id*. § 700.516(h). L.C. then sought and obtained further review from the Department's Office of Consumer Affairs. *See id*. §§ 702.841-.849.

2

L.C. contends that she requested and was denied the opportunity to be interviewed and present new evidence as part of that review. The Office of Consumer Affairs eventually upheld CPS's determination.

L.C. subsequently filed a motion with the Department requesting a rehearing or reversal of the abuse determination. Alternatively, L.C. requested a referral to the State Office of Administrative Hearings ("SOAH") for independent review. The Department responded to L.C.'s motion by telling L.C. that none of her requested remedies was procedurally authorized. Specifically, the Department told L.C. that (1) she had exhausted all of her review opportunities within the Department and (2) SOAH had no jurisdiction to review CPS's abuse determination until CPS sought to act on it (e.g., by informing a third party of it or denying L.C. a license to engage in an activity within CPS's purview).

L.C. subsequently sued the Department in Travis County District Court. She alleged that she had exhausted all of her administrative remedies and was entitled to judicial review under both the Administrative Procedures Act ("the APA"), Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008), and the Texas and United States Constitutions. As grounds for relief, L.C. alleged that the Department had violated its established procedures, reached a determination that was not supported by substantial evidence, abused its discretion, and violated L.C.'s due process rights.

The Department filed a plea to the jurisdiction, arguing that judicial review was not authorized because CPS's abuse determination was not a "final decision" resulting from a "contested case" as the APA requires. *See id*. §§ 2001.171 (judicial review authorized only for "[a] person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case"), 2001.003(1) (defining "contested case" as "a proceeding . . .

3

in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing"). The Department's plea did not address L.C.'s constitutional due process arguments.

The trial court granted the Department's plea. In a letter accompanying its order, the court explained that the Department's procedures neither qualified as a "contested case" under the APA nor violated L.C.'s due process rights, so L.C. had no right to judicial review. L.C. timely filed this appeal.

## STANDARD OF REVIEW

We review de novo the grant of a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Our task is to determine whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Id*. We also review de novo questions of statutory and constitutional interpretation. *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009).

## DISCUSSION

L.C. raises three issues on appeal. We will address them in turn.

### Issue One: Whether The Department's Procedures Qualify as a "Contested Case" Under the APA

L.C. first argues that the trial court erred in holding hers was not a "contested case" entitled to judicial review under the APA.

"In Texas, a person may obtain judicial review of an administrative action only if a statute provides a right to judicial review, or the action . . . violates a constitutional right."

*Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 172 (Tex. 2004). As L.C. acknowledges, the only statute that arguably provides a right to judicial review here is the APA. The APA provides a right to judicial review only in "contested cases." *See* Tex. Gov't Code § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."). The APA defines a "contested case" as a proceeding "in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." *Id*. § 2001.003(1).

L.C. argues that the Department's procedures were adjudicative in nature and that they determined her legal rights, duties, and privileges. We disagree; the Department's procedures did not determine any of L.C.'s legal rights, duties, or privileges. The only legal effect of the Department's procedures was the placement of L.C.'s name in a confidential registry pursuant to Family Code section 261.002. L.C. does not explain what rights, duties, or privileges were determined by this action; she simply asserts that her "rights, duties, and privileges as a parent have been forever tarnished." While having one's name placed in a child-abuse registry is almost certainly upsetting for parents who believe they are innocent, there is no legal right not to be "tarnished" in such a manner. Child-abuse registries are constitutional. *See Miller v. California Dep't of Soc. Servs.*, 355 F.3d 1172, 1177-79 (9th Cir. 2004) (citing, inter alia, *Paul v. Davis*, 424 U.S. 693 (1976)); *Smith v. Siegelman*, 322 F.3d 1290, 1296-97 (11th Cir. 2003) (same).[2] Second, L.C.'s relationship with her children was not impacted in a legally cognizable way by the

---

[2] We look to federal authority when construing rights that implicate due process. *See NCAA v. Yeo*, 171 S.W.3d 863, 867 n.14 (Tex. 2005).

placement of L.C.'s name in the registry; L.C. did not lose custody or visitation of her children or otherwise have her parental rights affected in any way. Thus, in a legal sense, none of L.C.'s "rights, duties, and privileges as a parent" were determined by the Department's procedures. As a result, we must conclude that L.C. has not been "aggrieved by a final decision in a contested case" and is therefore not entitled to judicial review under the APA. Tex. Gov't Code § 2001.171.

***Issues Two and Three: Whether the Department's Procedures Deprived L.C. of Due Process***

L.C. next argues that she was entitled to judicial review of the Department's procedures because they violated her due process rights. Specifically, she argues that "CPS'[s] failure to provide adequate notice to Appellant that she became the focus of the child abuse allegations" did two things: it (1) "impaired the fundamental and constitutionally protected interest possessed by Appellant, as a parent, in the care, custody, and control of her children" and (2) "hindered the liberty interest and property interest which the [Texas] and United States Constitution[s] grant to appellant to pursue her chosen profession."

We must dismiss the first of these arguments because, as noted above, L.C.'s relationship with her children was not legally affected by the Department's actions. L.C. states that her parental rights were "clearly infringed" by CPS's abuse finding, but she does not provide an argument to support this statement. Without such argument, L.C. does not establish that infringement of her parental rights was a basis for judicial review. *See Miranda*, 133 S.W.3d at 226 (plaintiff bears burden of alleging facts that affirmatively demonstrate trial court jurisdiction).

L.C.'s second due process argument—namely, that CPS's abuse determination hinders her ability to pursue her chosen profession—turns on the allegation that potential employers will learn of CPS's abuse determination. L.C. is a health-care provider, and she alleges that hospitals

6

and insurance companies will not work with her once they learn that her name has been placed in a registry of reported child-abuse cases. She also alleges that she will have to self-report CPS's abuse determination on the Texas Standardized Credentialing Application, a form that health care providers have to submit to carriers with whom they want to become credentialed. L.C. alleges that the form requires her to authorize the Department to release its abuse finding to those carriers, and as a result her employment prospects will suffer.

We believe that L.C.'s second argument is not ripe for adjudication, because as of the time she filed suit L.C. had never self-reported her abuse determination, authorized its release, or otherwise had her employment adversely affected by it. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000) ("A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass."). Trial courts have no subject matter jurisdiction over unripe claims. *Id*. at 851. But even if we assume that L.C.'s claim is ripe, it still does not demonstrate that the Department's procedures deprived L.C. of due process.

First, L.C. provides no legal basis for her claim that due process required the Department to inform her she had become the target of its investigation. L.C. claims that the Department violated its internal procedures in failing so to inform her, but that is not evidence of a due process deprivation. *See Alford v. City of Dallas*, 738 S.W.2d 312, 316 (Tex. App.—Dallas 1987, no writ) ("[T]o have a procedural due process cause of action, the plaintiff must establish a protectable property interest separate and apart from the rules themselves."). L.C. cites no authority, nor are we aware of any, holding that targets of administrative investigations have a due process right

7

to know they are being investigated. The targets of criminal investigations certainly have no due process right to know they are being investigated.

Second, the employment difficulties that may result from being stigmatized as a child abuser do not by themselves implicate due process. *See Siegelman*, 322 F.3d at 1298 ("deleterious effects that flow directly from a sullied reputation, such as the adverse impact on job prospects, are normally insufficient" to show due process deprivation). To show that CPS's abuse determination implicated her due process rights, L.C. must "show that the [Department's] conduct 'deprived [her] of a previously recognized property or liberty interest in addition to damaging [her] reputation.'" *Id*. (quoting *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436-37 (11th Cir. 1998)). L.C. does not identify a "previously recognized property or liberty interest"; she simply alleges that she will have trouble getting work as a result of the damage to her reputation. While it may be correct, this allegation is insufficient to establish a constitutional basis for trial court jurisdiction. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (damage to reputation and resulting impairment of future employment prospects insufficient to establish due process violation); *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) ("Neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries."); *see also In re M.A.H.*, 20 S.W.3d 860, 865 (Tex. App.—Fort Worth 2000, no pet.) (placing appellant on sex offender registry did not implicate due process where resulting impairment of educational and employment opportunities was "purely speculative"); *Ex parte Mercado*, No. 14-02-00750-CR, 2003 Tex. App. LEXIS 2886, at *12-13 (Tex. App.—Houston [14th Dist.] Apr. 3, 2003, no pet.) (mem. op., not designated for publication) (impairment of employment opportunities resulting from harm to reputation insufficient to establish due process violation).

Third, the child-abuse registry is confidential.  Unless L.C. consents, the Department cannot release information about her inclusion in the registry without first giving her a hearing before an administrative law judge.  *See* 40 Tex. Admin. Code §§ 700.602-.605.  Though we have found no authority on the matter, we presume that the hearing would qualify as a "contested case" under the APA and would consequently entitle L.C. to judicial review of an unfavorable result.  *See* Tex. Gov't Code § 2001.171.  In other words, L.C.'s abuser status should not become known to a third party unless L.C. consents or is afforded all the process she presently seeks.  This reinforces our conclusion that the Department has not yet deprived L.C. of due process.  *See Blackburn v. City of Marshall*, 42 F.3d 925, 936 n.10 (5th Cir. 1995) ("A prerequisite to raising a liberty interest claim based on stigma is that the statement be made public by the defendant.").

## CONCLUSION

L.C. had no right to judicial review of the placement of her name in the State's confidential child-abuse registry, as that placement did not arise through a "contested case" under the APA and did not implicate any constitutional liberty or property interest.  Thus, we affirm the order granting the State's plea to the jurisdiction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Waldrop;
   Concurring Opinion by Justice Pemberton;
   Concurring Opinion by Justice Waldrop

Affirmed

Filed:  November 13, 2009

9