# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00363-CV

**Melissa Gates, Appellant**

**v.**

**Texas Department of Family and Protective Services and Anne Heiligenstein, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-01-002857, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Melissa Gates appeals from the trial court's orders granting the plea to the jurisdiction of appellee Texas Department of Family and Protective Services (the Department) and the motion for summary judgment of appellee Anne Heiligenstein, a former commissioner of the Department. For the reasons that follow, we affirm the trial court's orders.

## BACKGROUND

Because the relevant facts that form the basis of Gates's allegations have been detailed in opinions issued by this Court, the First District Court of Appeals, and the Fifth Circuit, we do not detail them here except to the extent necessary to describe the relevant procedural background. *See* Tex. R. App. P. 47.1; *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404 (5th Cir. 2008); *Gates v. Texas Dep't of Family & Protective Servs.*, 252 S.W.3d 90 (Tex. App.—Austin 2008, no pet.); *In re T.G.*, 68 S.W.3d 171 (Tex. App.—Houston [1st Dist.]

2002, pet. denied); *see also Gates v. Fort Bend Cnty. Child Advocates, Inc.*, No. 01-03-01298-CV, 2005 Tex. App. LEXIS 4141 (Tex. App.—Houston [1st Dist.] May 26, 2005, pet. denied) (mem. op.).

Gates filed suit in 2001 against the Department. By her third amended petition, Heiligenstein, the Department's commissioner at the time, was a defendant. Gates's claims addressed the Department's investigation and subsequent actions after it received a report of child abuse by Gates in February 2000. *See* Tex. Fam. Code § 261.301 (requiring Department to "make prompt and thorough investigation of a report of child abuse"). Gates contended that the Department's investigation was not "thorough," *see id.*, and challenged the Department's administrative "summary finding" of "reason-to-believe" that Gates was a "designated perpetrator" responsible for child abuse. *See* 40 Tex. Admin. Code §§ 700.511 (Child Protective Services, Disposition of the Allegations of Abuse or Neglect), .512 (Conclusions About Roles).[1] Gates challenged the Department's placement of her name in its central registry of reported child-abuse cases and sought to have her name removed. *See* Tex. Fam. Code § 261.002(a) (requiring Department to "establish and maintain in Austin a central registry of reported cases of child abuse or neglect"); 40 Tex. Admin. Code § 700.104 (Child Abuse and Neglect Central Registry). She also challenged the Department's delay of her request for an Administrative Review of Investigative Findings (ARIF), *see* 40 Tex. Admin. Code § 700.516, and the fairness of the ARIF itself,[2] and

---

[1] Unless otherwise stated, citations to the Texas Administrative Code are to chapter 700, which chapter addresses Child Protective Services.

[2] *See generally Gates v. Texas Dep't of Family & Protective Servs.*, 252 S.W.3d 90, 93 (Tex. App.—Austin 2008, no pet.) (describing ARIF remedy).

2

alleged that the Department had improperly released confidential information. *See* Tex. Fam. Code § 261.201 (addressing confidentiality and disclosure of information, including reports of alleged or suspected child abuse or neglect); *see also* 40 Tex. Admin. Code § 700.203 (Access to Confidential Information Maintained by the Texas Department of Family and Protective Services (DFPS)).

Appellees filed a plea to the jurisdiction and a motion for summary judgment in July 2010. In their summary judgment motion, appellees asserted, among other grounds, that Gates's claims were barred by res judicata because they were "almost identical" and concerned "the same nucleus of operative facts at issue in prior lawsuits." In their plea, appellees asserted that the trial court lacked jurisdiction over Gates's claims based primarily upon the opinions in *L.C. v. Texas Department of Family and Protective Services*, No. 03-07-00055-CV, 2009 Tex. App. LEXIS 8778 (Tex. App.—Austin Nov. 13, 2009, no pet.) (mem. op.), and *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). Appellees argued that the court lacked jurisdiction over her claims brought under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, because: (i) the Department was not a proper party, (ii) Gates sought to control discretionary state action and thus had failed to establish a waiver of immunity, (iii) Gates had failed to show that Heiligenstein acted ultra vires of her constitutional or statutory authority, and (iv) the UDJA was not a stand-alone cause of action. As to Gates's constitutional claims, appellees contended that she had not suffered a cognizable injury and that claims were not ripe for judicial review. A few weeks later, appellees filed an amended plea to the jurisdiction, raising the same grounds as their initial plea to the jurisdiction.

3

Gates responded to the summary judgment motion and the pleas to the jurisdiction. She disputed that her claims were barred by res judicata and contended that the trial court had jurisdiction over her claims. She asserted that she had standing and that her claims were ripe because she had been and continued to be injured by the Department's alleged actions. Gates alleged that the summary finding that she was a "designated perpetrator" formed the basis of the Department's family service plan for her family and its petition to terminate her parental rights and that the entry of her name in the registry caused the Department to give greater weight to subsequent allegations against her and could preclude her from adopting or from working in child care. She also alleged that the Department released confidential information about her to others and that it delayed and failed to provide a fair ARIF. The ARIF was held in November 2008.

After a hearing in October 2010, the trial court signed an order that granted the motion for summary judgment as to Gates's claims against Heiligenstein. The court also granted the plea to the jurisdiction as to all of Gates's claims except it deferred ruling on the plea with respect to claims based upon an interview and transportation of one of Gates's children in 2001,[3] and it gave Gates "until November 19, 2010, to replead with respect to any injury claimed by the Department's alleged release of information in the registry in an attempt to establish the court's jurisdiction over that claim."

In January 2011, Gates filed a motion for leave to file her Fifth Amended Original Petition. A few weeks later, the Department filed a supplemental plea to the jurisdiction addressing

---

[3] The trial court granted the plea "as to the claims based on the Department's pursuit of a safety plan, on the denial of an opportunity to adopt through the Department, and on the delay of the ARIF."

4

Gates's claims based upon the alleged release of information about her. The Department urged that she did not claim any "stigma" or "stigma plus" related to the alleged releases. Shortly thereafter, Gates filed her Fifth Amended Original Petition as well as a supplement to that petition. In the supplement, Gates alleged that the Department and Heiligenstein violated section 2001.004 of the Government Code by promulgating invalid rules and that the defendants were not entitled to immunity under section 2001.038 of the Government Code. *See* Tex. Gov't Code §§ 2001.004, .038. Gates also filed a response to the Department's supplemental plea to the jurisdiction.

In March 2011, the trial court granted the Department's pleas and dismissed all of Gates's remaining claims for lack of jurisdiction. In its order, the trial court stated that it considered the Department's plea, its amended plea, and its supplemental plea to the jurisdiction, as well as Gates's responses. Gates filed a request for findings of fact and conclusions of law, but the trial court declined the request. Gates also filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**ANALYSIS**

Gates raises two issues on appeal. She contends that the trial court erred in concluding that it did not have jurisdiction in light of the facts alleged and claims asserted in her Fifth Amended Original Petition and supplement to that petition and that the trial court erred in granting Heiligenstein's motion for summary judgment.

5

*Standard of Review*

We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id*. at 226. We construe the pleadings liberally in favor of the plaintiff. *Id*. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id*. at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

We also review the trial court's decision to grant summary judgment de novo. *Texas Mun. Power Agency v. Public Util. Comm'n of Tex*., 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must establish that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

*Claims Against the Department*

The trial court concluded that it did not have subject matter jurisdiction over Gates's claims against the Department. In her first issue, Gates challenges this conclusion, urging that the trial court had jurisdiction over all of her claims. Appellees counter that the trial court did not err in dismissing Gates's claims based upon lack of standing and ripeness.

Subject matter jurisdiction requires a plaintiff bringing suit to have standing to do so. *Texas Ass'n of Bus. v. Texas Air Control Bd*., 852 S.W.2d 440, 443–45 (Tex. 1993). To have

6

standing, the plaintiff must show an "'injury in fact,' an invasion of a legally protected interest that is concrete and particularized, and that is actual or imminent rather than conjectural or hypothetical." *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Texas Ass'n of Bus.*, 852 S.W.2d at 446 (plaintiff bears burden to plead facts affirmatively demonstrating trial court's jurisdiction); *Webb v. Voga*, 316 S.W.3d 809, 812 (Tex. App.—Dallas 2010, no pet.) ("Standing is generally a question of law determined from the pleadings."). Trial courts also do not have subject jurisdiction over claims that are not ripe. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000) ("A case is not ripe when determining whether the plaintiff has concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass.").

As a preliminary matter, the parties join issue with whether we should consider the Fifth Amended Original Petition or an earlier petition in our analysis. Because we conclude the jurisdictional defects in the Fifth Amended Original Petition cannot be cured, we will consider that petition as well as Gates's supplement to that petition, in our analysis. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007) (requiring reasonable opportunity to amend pleadings to attempt to cure jurisdictional defects if defects can be cured). Gates, however, does not address all of the claims asserted in her Fifth Amended Original Petition and supplement in her appellant's brief. We limit our review then to the claims that she does address. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("In

7

the review of a civil case, an appellate court has no discretion to consider an issue not raised in an appellant's brief." (citation omitted)).[4]

In her Fifth Amended Original Petition, Gates alleges constitutional and statutory violations and seeks declaratory, injunctive, and mandamus relief, as well as attorney's fees. *See* U.S. Const. amend. I (freedom of religion), XIV (due process and equal protection); Tex. Const. art. I, §§ 6 (freedom of worship), 13 (open courts), 19 (due course of law); Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. Gates argues on appeal that the Department violated her due process and due course of law rights, her right to familial integrity, her equal protection rights, her right to privacy, her free exercise of religion rights, and her right to confidentiality and a "thorough investigation" of the report of child abuse as provided by Texas statutes. *See* Tex. Fam. Code §§ 261.201, .301(a).

Among her arguments, Gates urges that all she was required to plead with respect to her declaratory requests was "facts which evidence the existence of a justiciable controversy as opposed to a hypothetical and abstract dispute."[5] A request for declaratory relief, however, "does

---

[4] Gates acknowledges that her brief "does not specifically address every fact and claim pled . . . in her Fifth Amended Petitions."

[5] In her other arguments, Gates addresses: (i) her request for injunctive relief; (ii) her equal protection claims based upon the "inordinate" delay in the ARIF and the "cumulative treatment she received from [the Department] between 2000 and 2010"; (iii) her due process and due course of law claims arising from the conduct of the ARIF and the Department's conduct in this litigation; (iv) her claim of injury to her reputation by the Department's actions, including "labeling her as a child abuser" and releasing confidential information about her, and (v) her freedom of religion claim. As to her equal protection claim, Gates contends that she only had to plead that she was treated differently from others without a rational basis for such treatment to demonstrate the trial court's jurisdiction to hear her equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (recognizing "equal protection claims brought by 'class of one'"). As to her freedom of religion claim, she contends that the Department's conduct and practices evidence a "pervasive faith-based animus towards her and her family."

8

not alter a suit's underlying nature." *Heinrich*, 284 S.W.3d at 370–71. It is well established that "the UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'" *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (citations omitted). Asserting claims under UDJA without more then did not confer jurisdiction on the trial court.

This Court addressed similar issues in *L.C. v. Texas Department of Family and Protective Services*.[6] In that case, the Department investigated, made "an administrative 'summary finding' of 'reason to believe'" that a parent was a "'designated perpetrator' responsible for the 'abuse of a child,'" and placed the parent's name in the registry of reported child-abuse cases. *L.C.*, 2009 Tex. App. LEXIS 8778, at *2 (citing Tex. Fam. Code § 261.002(a); 40 Tex. Admin. Code §§ 700.511(b)(1), .512(b)(2)). The parent who was employed as a health care provider sued the Department asserting, among other claims, that her due process rights were violated. *Id*. at *9–10. She alleged that the Department had "impaired the fundamental and constitutionally protected interest possessed by Appellant, as a parent, in the care, custody, and control of her children" and "hindered the liberty interest and property interest which the [Texas] and United States Constitution[s] grant to appellant to pursue her chosen profession." *Id*. at *9. She also challenged the Department's procedure for its investigation. *Id*. at *10–11. The Department filed a plea to the jurisdiction, which the trial court granted. *Id*. at *1.

---

[6] We continue to recognize the concerns raised in the concurring opinions about the Department's child-abuse registry. *See L.C. v. Texas Dep't of Family & Protective Servs*., No. 03-07-00055-CV, 2009 WL 3806158, at *5–7 (Tex. App.—Austin Nov. 13, 2009, no pet.) (mem. op.).

On appeal, this Court upheld the trial court's order granting the plea. We concluded that the parent's "relationship with her children was not legally affected by the Department's actions," *id*. at *9, noting that she "did not lose custody or visitation of her children or otherwise have her parental rights affected in any way." *Id.* at *8. We also held that her claims concerning employment were not ripe. *Id*. at *10. We considered the fact that, as of the time of her suit, the parent had not had her employment adversely affected. *Id*. We further concluded that, even if her employment had been adversely affected, "employment difficulties that may result from being stigmatized as a child abuser do not by themselves implicate due process." *Id*. at *11–12 (citing and quoting, among other authorities, *Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (damage to reputation and resulting impairment of future employment prospects insufficient to establish due process violation); *Smith v. Siegelman*, 322 F.3d 1290, 1298 (11th Cir. 2003) ("deleterious efforts that flow directly from sullied reputation, such as adverse impact on job prospects are normally insufficient" to show a due process deprivation); *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) ("Neither harm to reputation nor consequent impairment of future employment are constitutionally cognizable injuries.")). We explained: "To show that CPS's abuse determination implicated her due process rights, [the parent] must show that the [Department's] conduct deprived [her] of a previously recognized property or liberty interest in addition to damaging [her] reputation." *See id*. at *12. (citations omitted). Finally, we concluded that the parent had not stated a due process violation based upon the Department's procedure in its investigation. *See id*. at *10–11.

Similarly, Gates did not allege or present evidence that the Department's challenged actions had "legally affected" her relationship with her children or that she had been precluded from

10

adopting or working in childcare.[7] *See id.*; *see also Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125–26 (3rd Cir. 1997) ("Whatever disruption or disintegration of family life the [parent] may have suffered as a result of [a] child abuse investigation does not, in and of itself, constitute a constitutional deprivation."). Gates also failed to plead facts to support a protected property interest in addition to damage to her reputation or an interest that would entitle her to greater process than she received during the Department's investigation. *See L.C.*, 2009 Tex. App. 8778, at \*10–11 ("[T]o have a procedural due process cause of action, the plaintiff must establish a protectable property interest separate and apart from the rules themselves." (quoting *Alford v. City of Dallas*, 738 S.W.2d 312, 316 (Tex. App.—Dallas 1987, no writ)); *see also* Tex. Fam. Code § 261.309(d) (allowing Department to postpone review until pending civil or criminal proceeding completed); 40 Tex. Admin. Code § 700.516(e) (allowing Department to postpone the conduct of ARIF when litigation pending relating to same acts or omissions involved in Department's finding of abuse). Further, Gates does not contend that the registry is itself unconstitutional. *See L.C.*, 2009 Tex. App. LEXIS 8778, at \*7 ("While having one's name placed in a child-abuse registry is almost certainly upsetting for parents who believe they are innocent, there

---

[7] As to Gates's claims based upon the alleged unauthorized release of information, Gates requested declaratory relief concerning the Department's alleged release of information without a hearing before an administrative law judge and injunctive relief from future releases. The Department is statutorily authorized to disclose confidential information "for purposes consistent with this code and applicable federal or state law or under rules adopted by an investigating agency." *See* Tex. Fam. Code § 261.201. We also note that, during this litigation as well as the prior proceedings, Gates has continuously disclosed her placement on the central registry. *Cf. Gates*, 252 S.W.3d at 92; *L.C.*, 2009 WL 3806158, at \*1 n.1 (parent challenging placement on central registry identified by pseudonym and record sealed).

11

is no legal right not to be 'tarnished' in such a manner. Child abuse registries are constitutional." (citations omitted)).

We also are mindful that, among appellees' asserted grounds in their pleas, they contended that the trial court did not have jurisdiction over Gates's claims against the Department based upon sovereign immunity. *See Heinrich*, 284 S.W.3d at 371–73 (addressing whether governmental entities or their officers in their official capacities are proper parties to a suit seeking declaratory relief for alleged ultra vires actions and concluding that sovereign immunity does not prohibit "suits to require state officials to comply with statutory or constitutional provisions"). For suits against a state agency, a plaintiff must "establish the state's consent" to suit, *see Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999), or that immunity is inapplicable, *see Heinrich*, 284 S.W.3d at 372. "[T]he UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Sefzik*, 355 S.W.3d at 621. Claims may be brought under the UDJA against a state official "for nondiscretionary acts unauthorized by law" under the ultra vires exception, but not against the state agency. *Id.* at 621. To the extent then that Gates's claims are ultra vires claims, the Department was not a proper party. *See id.*; *Heinrich*, 284 S.W.3d at 371–73.

Informed by the analysis and holdings in *L.C.* and *Heinrich*, we conclude that the trial court did not err in granting the Department's pleas to the jurisdiction and dismissing Gates's claims asserted against the Department in her Fifth Amended Original Petition.

12

*APA Claim*

As to her supplemental petition to her Fifth Amended Original Petition, Gates alleged that the Department's actions amounted to rules and that the Department failed to comply with the Administrative Procedure Act (APA) in adopting these rules. *See* Tex. Gov't Code § 2001.003(g) (defining "rule" to mean "a state agency statement of general applicability . . . ."). Gates urges that the Department violated the APA by "manufacturing rules without first complying with the rule-making procedure mandated by the APA." The APA allows a person to challenge the validity or applicability of an agency rule pursuant to a declaratory judgment action "if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." *Id*. § 2001.038(a). Even were we to conclude that Gates alleged a threatened legal right or privilege, Gates has not identified an "agency statement of general applicability." *See id.* § 2001.003(g); *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008)) ("The term 'general applicability' under the APA references 'statements that affect the interest of the public at large such that they cannot be given the effect of law without public input.'" (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)). Her claims focus on the Department's specific conduct directed toward her. She thus failed to establish the Department's consent to suit as to her purported APA claim. *See Jones*, 8 S.W.3d at 638. We overrule Gates's first issue.

*Claims Against Heiligenstein*

In her second issue, Gates contends that the trial court erred in granting Heiligenstein's motion for summary judgment. She contends that, because she sued the

13

Commissioner in her official capacity, the claims against the Department apply equally to her. To the extent that Gates was alleging that Heiligenstein acted ultra vires and sought prospective injunctive relief, Gates properly named Heiligenstein as a party for those claims. *See Heinrich*, 284 S.W.3d at 372.

Heiligenstein, however, sought summary judgment, among other grounds, based upon res judicata, and Gates has not challenged that ground on appeal. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79–80 (Tex. 1989) ("When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious."); *Canton-Carter*, 271 S.W.3d at 930 (appellate courts have no discretion to consider issue not raised in appellant's brief); *Cruikshank v. Consumer Direct Mortg., Inc.*, 138 S.W.3d 497, 502–03 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that a general issue statement that trial court erred in granting summary judgment "only sufficient to preserve a complaint if the specific ground challenged on appeal is supported by argument"); *see also* Tex. R. App. P. 38.1 (requisites of appellant's brief). Thus, Gates has failed to preserve complaint as to the summary judgment granted in favor of Heiligenstein. *See Cruikshank*, 138 S.W.3d at 502–03. On this basis, we overrule Gates's second issue.

## CONCLUSION

For these reasons, we affirm the trial court's orders.

14

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   August 15, 2013