# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00658-CV

---

**Amber K. Walkington, CRNA, Appellant**

**v.**

**Texas Board of Nursing; Kathy Shipp, MSN, RN, FNP, Texas Board of Nursing President; and Katherine A. Thomas, MN, RN, FAAN, Texas Board of Nursing Executive Director, Appellees**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-005747, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is a suit for judicial review of a final order of the Texas Board of Nursing in a disciplinary proceeding. The Board found that Amber K. Walkington committed misconduct and imposed a two-year probated suspension of her license. The district court affirmed the order. We affirm.

## BACKGROUND

Walkington is a Certified Registered Nurse Anesthetist (CRNA) and has been employed by United States Anesthesia Partners since 2011. On February 22, 2019, Walkington assisted with a total knee replacement surgery. Working with Dr. Kirk LeBlanc, her supervising anesthesiologist, Walkington was to perform a spinal block on the patient. Before taking the patient to the operating room, Walkington accessed the hospital's medication dispensing system

to obtain two medications unavailable in the operating room: .5% bupivacaine, a local anesthetic; and tranexamic acid (TXA), a medication used to slow bleeding and reduce blood loss.

Because performing a spinal block requires maintaining a sterile field, Walkington could not touch the vial of bupivacaine after starting the procedure. She passed the bupivacaine and the spinal tray (a sterile container with the materials necessary to perform a spinal block) to anesthesia technician Aaron Hart. Walkington put on her gloves and began the various tasks to prepare the patient for the procedure. Hart put the vial down so that he could hold the patient upright while Walkington worked. Walkington then asked Hart for the vial of bupivacaine, referring to it as either bupivacaine or "the local." Hart testified that he continued holding the patient with one hand and picked up a medication vial from the top of the "anesthesia vent." He asked Walkington "is this the one you want" and "she said yes." Walkington withdrew the medication into a syringe and administered it to the patient. Walkington testified that she did not look at the label or ask Hart to read the name off the label. While cleaning up, Walkington found the vial of bupivacaine underneath the wrapper of the spinal tray; the open vial of TXA was on top of the anesthesia vent.

Walkington immediately texted Dr. LeBlanc, who had been attending to another patient. Dr. LeBlanc researched the effects of administering TXA through the spine and decided to cancel the surgery. Although initially stable, the patient soon began to experience seizures and was transferred to intensive care, where he was intubated. Later that day, the patient was transferred to another hospital where he spent five days in the intensive care unit while experiencing seizures. The patient spent the next five weeks at University of Texas

Southwestern Medical Center, where he was diagnosed with an anoxic brain injury. He spent another month in a skilled nursing facility before returning home.

Board staff filed a formal disciplinary charge against Walkington alleging that she engaged in unprofessional conduct and failed to meet the minimum standards of nursing practice in violation of the Texas Nursing Act and Board rules. *See* Tex. Occ. Code § 301.452(b)(10) (authorizing discipline for unprofessional conduct), (14) (authorizing discipline for failure to conform to minimum standards of nursing practice in manner that exposes patient to unnecessary risk of harm); 22 Tex. Admin. Code § 217.11(1)(A)–(C) (Tex. Bd. of Nursing, Standards of Nursing Practice); 22 Tex. Admin. Code § 217.12(1)(A), (B), (4) (Tex. Bd. of Nursing, Unprofessional Conduct).

Walkington disputed the charges, and the case was referred to the State Office of Administrative Hearings for a contested case proceeding. *See* 22 Tex. Admin. Code § 213.22(a) (Tex. Bd. of Nursing, Formal Proceedings). An administrative law judge (ALJ) held an evidentiary hearing on October 26-28, 2020. Board staff presented testimony from Hart; James Walker, Ph.D., CRNA; and Jonathan Riddle, Ph.D., CRNA. Walkington presented testimony from herself and two expert witnesses: Catherine Keen, CRNA, and Jordyn Feldmann, CRNA. The ALJ subsequently issued a proposal for decision (PFD) concluding that Board staff had met its burden to establish that Walkington is subject to discipline and recommending that the Board impose a probated suspension of her license for two years as a sanction.[1]

---

[1] The PFD states that the ALJ determined that Board staff bore the burden of proof by a preponderance of the evidence based on the factors laid out in a SOAH rule. *See* 1 Tex. Admin. Code § 155.427 (State Off. of Admin. Hearings, Burden of Proof) (explaining how ALJs are to assign burden of proof). The Board does not dispute this determination.

The Board considered the matter at a public hearing and issued a final order adopting all the ALJ's findings and conclusions and imposing a probated suspension of two years. Walkington filed a motion for rehearing, which was overruled by operation of law. *See* Tex. Gov't Code § 2001.146(c) (providing that motion for rehearing overruled by operation of law if state agency takes no action in fifty-five days). Walkington sought judicial review in Travis County District Court. *See* Tex. Occ. Code § 301.555(a) ("A person against whom the board has taken adverse action under this chapter may appeal to a district court in the county of the person's residence or in Travis County."). The district court affirmed the Board's order, and this appeal ensued.

## LEGAL STANDARDS

We review a final order of the Board in a disciplinary case under the substantial evidence standard of review codified in the Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.174 (directing courts to review final decisions in contested case hearings under substantial evidence rule "if the law does not define the scope of judicial review"); *see also Williams v. Texas Bd. of Nursing*, No. 03-21-00089-CV, 2022 WL 1751612, at *8 (Tex. App.—Austin June 1, 2022, no pet.) (mem. op.) (reviewing Board's findings in disciplinary case under substantial evidence standard).

Under this standard, a reviewing court shall reverse or remand a case for further proceedings if the appellant's "substantial rights" have been prejudiced "because the administrative findings, inferences, conclusions, or decisions" are, relevant here, "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole" or "arbitrary or capricious or characterized by abuse of discretion or clearly

4

unwarranted exercise of discretion." Tex. Gov't Code § 2001.174(2)(E)–(F). The agency's decision is presumed to be valid, and the burden is on the contestant to demonstrate otherwise. *Texas Comm'n on Env't Quality v. Maverick County*, 642 S.W.3d 537, 547 (Tex. 2022). Whether an agency decision meets this standard is a legal question that we review without deference to the trial court. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam); *TJFA, L.P. v. Texas Comm'n on Env't Quality*, 632 S.W.3d 660, 667 (Tex. App.—Austin 2021, pet. denied).

## DISCUSSION

Walkington brings four issues challenging the Board's order. She argues that Findings of Fact 8 and 19 are unsupported by substantial evidence (issues one and two); Conclusions of Law 5-9, which are based on those findings, are erroneous (issue three); and that the Board acted arbitrarily and capriciously in imposing the probated suspension (issue four).

### *Findings and Conclusions*

We start with Walkington's arguments that Findings of Fact 8 and 19 are not "reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *See* Tex. Gov't Code § 2001.174(2)(E). Review under this standard is "highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *North East Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020). Substantial evidence in this sense "does not mean a large or considerable amount of evidence" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Slay v. Texas Comm'n on Env't Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied). The evidence may even

"preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Riou*, 598 S.W.3d at 251.

*Finding of Fact 8*

Finding of Fact 8 states: "The TXA was unaccounted for in that [Walkington] could not identify where it was at the time of the procedure." Walkington contends that the record does not support this finding because she testified that she placed the vial of TXA on top of the "anesthesia machine." But Walkington's testimony was conflicting on that point.[2] When first asked what she did with the vial of TXA after obtaining it from the medication dispensing system, she replied: "I don't remember exactly. I believe I put the tranexamic acid on the back table somewhere." Asked again about the specific location of the TXA, she replied "I don't remember specifically." Later in the same hearing, the ALJ asked where she "said [she] placed the TXA," and Walkington responded "I believe I placed it on the anesthesia machine top." In concluding that Walkington was unaware of the location of the TXA at the time of the procedure, the Board essentially determined that her first answer—that she did not remember the exact location where she placed the vial of TXA after entering the operating room—was more credible, and we defer to that determination. *See Lindsey v. Texas State Bd. of Veterinary Med. Exam'rs*, No. 03-16-00549-CV, 2018 WL 1976577, at *3 (Tex. App.—Austin Apr. 27, 2018, pet. denied) (mem. op.) ("[W]e will defer to the agency's judgments on the weight of the evidence on questions committed to the agency's discretion . . . ."); *County of Reeves v. Texas*

---

[2] Walkington emphasizes that Hart also testified that the vial of TXA was in the same place, but Finding 8 states that the TXA was unaccounted for because Walkington was unaware of the vial's location in the operating room "at the time of the procedure." Walkington does not challenge Finding 17, which states that accounting for the medications was her sole responsibility.

6

*Comm'n on Env't Quality*, 266 S.W.3d 516, 528 (Tex. App.—Austin 2008, no pet.) ("The agency determines the meaning, weight, and credibility to assign conflicting evidence . . . ."). We conclude that Finding 8 is reasonably supported by the record and overrule Walkington's first issue.

In her second issue, Walkington challenges Finding of Fact 19, where the Board explains what minimum standards of nursing practice required in the situation and how Walkington's actions failed to meet those standards.[3] This argument implicates several other findings regarding the standard of care and her responsibilities:

14. A basic principle of nursing is the "Five Rights" of medication administration: the nurse shall confirm that he or she has the right patient, the right medication, the right dose, the right time, and the right route.

15. All nurses, including CRNAs, are required to utilize the Five Rights when administering medication to a patient.

16. A nurse may not delegate his or her duty of medication administration to an unlicensed person and that the duty to follow the Five Rights remains with the nurse.

17. [Walkington], as the licensed individual, is the only one responsible for accounting for the medications.

18. At the time [Walkington] drew up her syringe from the medication vial Mr. Hart was holding up for her, she assumed, but did not know for certain, what vial Mr. Hart was holding up.

Applying these standards to the facts, the Board found that:

19. As [Walkington] drew the medication into the syringe, she did not perform a final check to read the label on the vial of medication the anesthesia technician was holding, and she did not ask the anesthesia technician to read the label out loud before drawing it. *Given that the TXA was not accounted for in the OR*, the minimum standards of nursing practice required [Walkington] to at least perform

_____

[3] Although Walkington couches this issue as challenging findings 18 and 19, her argument challenges only Finding 19.

7

one of the following acts before administering the medication: ask that Mr. Hart read the name of the medication aloud to confirm the medication; or ask Mr. Hart [to] hold the medication vial closer and/or reposition his hands so that [Walkington] could verify its contents by reading the label of the medication herself. [Walkington] did neither. By failing to perform either action, [Walkington] failed to follow the Five Rights, which resulted in a violation of the minimum standard of nursing practice.

(Emphasis added). Walkington interprets Finding 19 as conditioning her duty to perform a final check of the medication on the TXA being "not accounted for" in the operating room. She argues that this is inconsistent with the testimony of Walker and Riddle, each of whom testified that a CRNA must always perform a final check of the medication before withdrawing it into the syringe. Walkington argues that the Board therefore applied a standard of care without support in the record. The Board responds that Finding 19 does not alter the standard of care but applies it to the facts of the case.

We agree with the Board. "'[O]ne cannot divorce text from context' when construing written instruments, as '[t]he meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them.'" *In re Piatt Servs. Int'l*, 493 S.W.3d 276, 281 (Tex. App.—Austin 2016, orig. proceeding) (quoting *In re Office of the Att'y Gen. of Tex.*, 456 S.W.3d 153, 155–56 (Tex. 2015) (orig. proceeding)). Construing the emphasized language in context, Finding 19 lays out what complying with the standard of care required under the circumstances: because Walkington could not be absolutely sure that Hart held up the correct vial, she should have either asked him to read off the label or reposition his hand so that she could read it herself. Finding 19 does not condition the verification requirement on the presence of unaccounted-for medication or indicate that Walkington would not be required to verify if she believed it was the only medication in the

8

operating room.  This finding is consistent with Walker and Riddle's testimony regarding the standard of care.  We conclude that Finding 19 is reasonably supported by the record.[4]  We overrule Walkington's second issue.

### *Conclusions of Law 5-9*

In her third issue, Walkington argues that conclusions of law 5-9 are not supported by substantial evidence because findings 8 and 19 are not.  We overrule this issue because we have concluded that those findings are supported by substantial evidence.

### Challenge to the Suspension

Walkington argues in her final issue that the Board's decision to impose a two-year probated suspension was arbitrary and capricious.  *See* Tex. Gov't Code § 2001.174(2)(F).  She contends that the Board failed to follow its own rule that sets out the process for determining the appropriate sanction.  *See generally* 22 Tex. Admin. Code § 213.33 (Tex. Bd. of Nursing, Factors Considered for Imposition of Penalties/Sanctions) (setting out matrix for determining appropriate disciplinary sanction).  The Board responds that Walkington

---

[4] Walkington also argues that the Board should have made findings regarding why it chose to credit Walker and Riddle over her expert witnesses.  The APA requires that final administrative orders must include findings of ultimate fact.  Tex. Gov't Code § 2001.141(a).  Findings of underlying facts, however, "are not required in a final administrative order unless 'an ultimate fact embodies a mandatory fact finding set forth in the relevant enabling act' or when the ultimate fact represents a criterion 'the legislature has directed the agency to consider in performing its function.'"  *Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, No. 03-21-00242-CV, 2022 WL 17970219, at *7 (Tex. App.—Austin Dec. 28, 2022, no pet.) (mem. op.) (quoting *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 451 (Tex. 1984)).  That is, "when an agency's enabling act does not require it to make any particular finding of fact or does not direct it to consider any particular criterion," then "the agency is not obligated to make any findings of basic fact at all."  *Harrison v. Texas State Bd. of Dental Exam'rs*, No. 03-18-00229-CV, 2020 WL 370886, at *5 (Tex. App.—Austin Jan. 23, 2020, no pet.) (mem. op.).  Walkington cites no authority requiring findings of fact regarding the credibility of conflicting witnesses.

failed to preserve this issue by including it in her motion for rehearing and, in the alternative, that its imposition of the sanction was not arbitrary and capricious.

A timely motion for rehearing is a prerequisite to filing a suit for judicial review of an administrative decision in a contested-case hearing. *See* Tex. Gov't Code § 2001.145(a); *Mosley v. Texas Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 260 (Tex. 2019). "The timely filing of a motion for rehearing is jurisdictional, but the sufficiency of the motion's content goes solely to the issue of preservation of error." *BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*, 93 S.W.3d 570, 578 (Tex. App.—Austin 2002, pet. denied). To preserve an issue for review, the motion must set out "(1) the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests." *Upper Trinity Reg'l Water Dist. v. National Wildlife Fed'n*, 514 S.W.3d 855, 870 (Tex. App.—Houston [1st Dist.] 2017, no pet.). While preservation of error requires both elements, the "'standard is one of fair notice' and does not require 'a briefing of the law or facts.'" *Vergo Patio Gardens, Inc. v. Railroad Comm'n of Tex.*, No. 03-19-00070-CV, 2022 WL 1193665, at *5 (Tex. App.—Austin Apr. 22, 2022, no pet.) (mem. op.) (quoting *Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 445 (Tex. App.—Austin 2011, pet. denied)).

In her motion for rehearing, Walkington argues that the Board's findings of fact are not supported by substantial evidence and, consequently, she is not subject to discipline. The only mention of the suspension of her license is that "without Findings of Fact to support the conclusion that [Walkington]'s conduct is subject to sanction, the Board may not impose a disciplinary sanction, and has no need to consider the aggravating and mitigating circumstances set forth by Tex. Admin. Code § 213.33." Nothing in the motion gives the Board fair notice that

10

Walkington challenged whether the Board followed Rule 213.33 when determining the proper sanction. We conclude that Walkington failed to preserve this issue for review. *See Johnson Cnty. Special Util. Dist. v. Public Util. Comm'n of Tex.*, No. 03-17-00160-CV, 2018 WL 2170259, at *11 (Tex. App.—Austin May 11, 2018, pet. denied) (mem. op.) ("When an agency or board has not had the opportunity to consider claims or arguments, they are waived on appeal." (citing *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of Tex. Dep't of Transp.*, 156 S.W.3d 91, 104 (Tex. App.—Austin 2004, pet. denied))); *Upper Trinity Reg'l Water Dist.*, 514 S.W.3d at 870 (holding motion for rehearing that failed to mention legal or factual basis was insufficient to preserve error). We overrule Walkington's fourth issue.

### CONCLUSION

We affirm the district court's judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   September 28, 2023